STATE OF CONNECTICUT *v.* HENRY SMITH

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

18

Argued October 15, 1980—decision released January 27, 1981

*Alan M. Solomon,* for the appellant (defendant).

*William F. Gallagher,* special assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Thomas V. O'Keefe,* assistant state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. The defendant was tried to a jury on a two count information, each count of which charged him with committing acts likely to impair the morals of a minor child, in violation of General Statutes § 53-21.[1] The first count alleged conduct which occurred on Mansion Road in Wallingford on or about the beginning of May, 1977; the second count concerned acts which took place in Wallingford on divers dates in the latter part of

---

[1] General Statutes § 53-21 provides in full: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

May and in June, 1977. The defendant was found guilty on both counts, and on several grounds he appeals from the judgment rendered thereon.

The defendant's first three claims of error involve the very essence of his conviction—the constitutionality of § 53-21. He contends: (1) that the statute is void for vagueness because it fails to give adequate notice of the forbidden conduct and leaves judges and jurors free to decide, on a case by case basis, what conduct is prohibited; (2) that the statute violates the constitutional guarantee of the separation of powers because it delegates the duty and responsibility for defining criminal activity to the judicial branch of government; and (3) that the statute violates the constitutional prohibition against ex post facto laws because it requires and permits prosecutors, judges and juries to define subjectively criminal conduct in retrospect.

We deal first with the defendant's claim that General Statutes § 53-21 is void for vagueness. That statute, as it pertains to this case, states: "Any person who . . . does any act likely to impair the . . . morals of any such child [under the age of sixteen years], shall be fined not more than five hundred dollars or imprisoned not more than ten years or both." Since, as a general rule, the constitutionality of a statutory provision being challenged as void for vagueness is determined by the statute's applicability to the particular facts at issue; *United States* v. *Powell,* 423 U.S. 87, 92, 96 S. Ct. 316, 46 L. Ed. 2d 228 (1975); *United States* v. *Mazurie,* 419 U.S. 544, 550, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975); *State* v. *Pickering,* 180 Conn. 54, 57, 428 A.2d 322 (1980); we set forth the circumstances surrounding the facts of this case.

From the evidence presented at trial, the jury could have found the following: At the time of the incidents complained of, the victim was twelve years of age, and lived with her mother, two brothers, and sister in a house in Wallingford. The defendant Henry Smith lived in a house nearby. The defendant was the father of the victim's stepfather who, after eleven or twelve years of marriage to her mother, had recently moved out of the house. During the years that she lived in the house in Wallingford, the victim and her brothers and sister would see the defendant frequently; he would often give them soda and other things. The victim testified that sometime in early May of 1977—she could not remember the exact date—she went over to the defendant's house with a motorcycle that needed repairs. The defendant told her that the motorcycle was too hot to work on, and needed time to cool down. He then brought the motorcycle into his house. While the motorcycle was cooling, the defendant took the victim into his bedroom and told her to take down her pants and her underpants. After she did this, he touched her "on the top and on the bottom" and then got on top of her on the bed without removing his own clothes. While on the bed he touched her again, rubbed against her, and then put his finger inside of her. She told him that her mother was calling, and got up and pulled her pants on. The defendant then fixed the motorcycle, and she went home.

About a week later, the victim was walking in the area of the defendant's house, and went inside his house into the bathroom to comb her hair. The defendant entered the bathroom behind her, and closed and locked the door. He told her to pull down

her pants; he then touched her and rubbed against her, and placed his finger in her. She then left the defendant's house and went home.

The victim also testified that about a week and a half or two weeks after the second incident, she was walking down the road and saw someone behind the defendant's house who she thought was her brother. She walked over and saw that it was the defendant, who was changing the oil of a car. The defendant took the victim into some bushes and touched her inside her pants. He kissed her and made her kiss him; and again he placed his finger inside her.

Sometime in August, 1977, the victim told her mother that she wished to talk to her. After some conversation, the victim's mother asked her what was going on between her and the defendant. The victim told her mother that the defendant hugged and kissed her and touched her on the top, but told her no further details. The victim's mother took her to the police station. After the victim described these incidents to the police, a warrant was issued for the defendant's arrest. The defendant was subsequently arrested on September 7, 1977.

In *State* v. *Pickering,* supra, we considered the constitutionality of that portion of § 53-21 presently under attack as being void for vagueness as it related to the facts of that case. We held that the words of § 53-21 at issue avoided unconstitutional vagueness since an innocent defendant is not denied fair warning of what conduct is prohibited. *State* v. *Pickering,* supra, 62–63. After reviewing various opinions of this court which involved the language at issue, we concluded that: "This court's opinions

pursuant to § 53-21 make it clear that the deliberate touching of the private parts of a child under the age of sixteen in a sexual and indecent manner is violative of that statute." *State* v. *Pickering, supra,* 64. The conduct of the defendant in this case during the time periods encompassed by both counts of the information clearly involved deliberate touching of this nature. Just as in *Pickering,* the defendant's behavior rendered him a violator as to whom the statute was not vague. *State* v. *Pickering, supra,* 5; see *Smith* v. *Goguen,* 415 U.S. 566, 578, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974).

The defendant goes on to claim that § 53-21 violates the constitutional guarantee of the separation of powers between the legislative, judicial and executive branches of government. Conn. Const., art. II.[2] He claims that this statute is constitutionally infirm because in it the legislature has delegated its primary responsibility for standard-setting to prosecutors, judges and juries whose "subjective intuition" as to the meaning of the words ". . . likely to impair the health or morals" determines who will be prosecuted and who will be convicted. We do not agree.

The defendant argues that because the power of the legislature to delegate its duties is "severely limited" by the constitution, a statute must, ". . . declare a legislative policy, establish primary standards for carrying it out, or lay down an intelligible principle . . . ." *Mitchell* v. *King,* 169 Conn.

---

[2] Conn. Const., art. II provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

140, 142, 363 A.2d 68 (1975), quoting *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586 (1940). This claim is not purely one of delegability but incorporates the defendant's earlier argument going to the unconstitutional vagueness of § 53-21. In addressing the specific claims made here by the defendant, we find that § 53-21 is not infirm as contended. It clearly lays down a legislative policy on the subject legislated upon. See *State* v. *Pickering,* supra. Our decision in *State* v. *Dennis,* 150 Conn. 245, 188 A.2d 65 (1963), which was quoted with approval in *State* v. *Pickering,* supra, and *Pickering* itself demonstrate our conclusion that § 53-21 establishes primary standards for carrying out the statutory mandate. In doing so, as we have already noted above, the statute gives that fair warning of the conduct proscribed which due process requires of a penal statute. See *State* v. *Pickering,* supra, 59–61; see also *Smith* v. *Goguen,* supra, 572 n.8; *United States* v. *Harriss,* 347 U.S. 612, 617, 74 S. Ct. 808, 98 L. Ed. 989 (1954); *Winters* v. *New York,* 333 U.S. 507, 515–16, 68 S. Ct. 665, 92 L. Ed. 840 (1948). Thus, § 53-21 does not contravene the doctrine of separation of powers because it does not represent any delegation of legislative powers as claimed.

The defendant's third constitutional attack is that § 53-21 violates the United States constitution's provision against ex post facto laws because it "requires and permits prosecutors, judges and juries to subjectively define criminal conduct *in retrospect.*" (Emphasis added.) This argument specifically invokes article I § 10, of the United States constitution which provides in part that "[n]o State shall . . . pass any . . . ex post facto Law." In *Dobbert* v. *Florida,* 432 U.S. 282, 97 S. Ct. 2290, 53 L. Ed. 2d 344, reh. denied, 434 U.S. 882, 98 S. Ct.

246, 54 L. Ed. 2d 166 (1977), Justice Rehn-
quist stated (p. 292) the characteristics of an ex
post facto law: " 'It is settled by decisions of this
Court so well known that their citation may be dis-
pensed with, that any statute which punishes as a
crime an act previously committed, which was
innocent when done; which makes more burdensome
the punishment for a crime, after its commission,
or which deprives one charged with crime of any
defense available according to law at the time when
the act was committed, is prohibited as *ex post
facto.*' " [3] The claim that § 53-21 is an ex post facto
law under the first of these characteristics, which is
the only one even arguably applicable, is without
merit. Earlier in this opinion we disposed of the
argument that this statute permits the subjective
definition of the criminal conduct proscribed. Our
opinions in *Pickering* and *Dennis* also make it clear
that the type of acts for which the defendant was
convicted would long have been considered violative
of the statute. We, therefore, cannot accept the
defendant's claim that § 53-21 violates the ex post
facto clause of the federal constitution. See also
*State* v. *Holloway,* 144 Conn. 295, 301, 130 A.2d 562
(1957); *State* v. *Kemp,* 126 Conn. 60, 86, 9 A.2d 63
(1939).

The defendant also contends that the trial court
erred in its instructions to the jury on the state's
burden of proof. He claims that the charge served
to diminish materially the constitutionally man-
dated burden of proof beyond a reasonable doubt.
We agree.

---

[3] For an annotation of the "Supreme Court's views as to what con-
stitutes an ex post facto law prohibited by (the) Federal Constitu-
tion" see 53 L. Ed. 2d 1146 et seq.

Although the trial judge correctly defined the state's burden of proof at the beginning of the charge, it later gave the following instructions: "Now, if you find that the State has sustained their burden of proof on each individual count, the first count, the second count, and proved the case to you beyond a reasonable doubt, then, of course, on that count, each count, I should say, your verdict must be guilty. If you find that, on either or both counts, the evidence weighs equally, then, of course, the State has not sustained its burden of proof, and your verdict must be not guilty on either or both of the charges, because the State has the burden of proving the case beyond a reasonable doubt. In other words, if the scales of justice are even, the State has not sustained its burden of proof beyond a reasonable doubt. If you find that the evidence and the testimony presented by the State does not convince you that he is guilty of each count beyond a reasonable doubt, then your verdict is not guilty. If you find that you are convinced on each one of the counts, then, of course, your verdict is guilty."

At the conclusion of the court's instructions, both the state[4] and the defendant noted problems which

[4] The following colloquy took place between the court and the assistant state's attorney, Mr. Thomas O'Keefe:

"The Court: Do you want to take exceptions first, to see if you want to make any changes?

"Mr. O'Keefe: Yes, I think that's the best way to do it. I don't have an exception to the charge in particular; I do, however, want to point out to your Honor for possible correction that the fact that your Honor, toward the end of the charge, mentioned if the scales were even, then the defendant must be found not guilty. That is so, but I think that there's a possibility of two things happening there: One being that they would use an incorrect standard, thinking that if the scales tip in favor of the State, that somehow they should find him guilty, and I think your Honor should tell them that that's not the burden; that proof beyond a reasonable doubt is the burden;

they had with the charge, and the defendant took an exception on the basis that the charge might create the impression that the defendant could be convicted on a standard less than that of proof beyond a reasonable doubt.[5] Thereafter, the jury were called back and the following instruction was given: "Now, the attorneys have called my attention to the fact that when I used the description of the scales of justice to you before, it might have been vague or uncertain. Now, as I said, if the scales of justice weigh equally, the State has not sustained its burden of proof beyond a reasonable doubt. Now, if you find that the State has presented evidence so that the scale tips in favor of the State, you still must be convinced that the defendant is guilty on each charge beyond a reasonable doubt. I am sorry that I cannot give you a graphic or pictorial description as to what is required for the State to prove their case beyond a reasonable doubt by indicating on the

---

that that's just an example that you used. The standard is not a tipping of the scales, but proof beyond a reasonable doubt which is fair to describe is more than just a tipping of the scales in the State's favor. I think your Honor used that example, and said, 'If the scales are even, you have to find him not guilty.' I think you can take that one step further and say, 'If the scale tips in the State's favor, you can find him guilty.' That's something that occurred to me. I also note that your Honor didn't charge on inferences. I didn't request it, but I thought your Honor might charge it. I am not requesting it now. It's just for your Honor's information. I am not excepting to that not being in your Honor's charge. I think your Honor should give a little further instruction; that you should give it just for the sake of clarification; reemphasize that proof beyond a reasonable doubt is the standard."

[5] The defendant's attorney stated: "The defendant does take exception to your Honor's charge that — my recollection is that your Honor charged if the scales aren't tipped, then the State hasn't made it. You then, in the next sentence, referred to reasonable doubt, and it appears to me, at least, as though you were tying reasonable doubt to merely a tipping of the scales in the State's favor, and it was confusing in that respect, to imply through a reasonable doubt that the State need only tip the scales beyond there [sic] being even."

scale whether it would be an inch or a foot or a yard or a mile. I can't do that, so please bear in mind that if the evidence is in equipoise or equal, the State has not sustained its burden, and in that case, you would find the defendant not guilty. For the State to prevail, you must find the scales tipped beyond a reasonable doubt." The defendant excepted to this "correcting" charge also, claiming that the charge still left the distinct inference that a mere preponderance of the evidence, or a slight tipping of the scales, would be sufficient to support a verdict of guilty.[6]

In order to determine whether this portion of the charge constituted reversible error, we, of course, consider the charge as a whole. *State* v. *Theriault,* 182 Conn. 366, 379, 438 A.2d 432 (1980); *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977); *State* v. *Edwards,* 163 Conn. 527, 537, 316 A.2d 387 (1972).

It has long been recognized that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The jury must be clearly instructed on this standard of proof. *Hughes* v. *United States,* 363 A.2d 284, 287 (D.C. App. 1976). "Attempts to enlarge upon the standard instruction on burden of proof and reasonable doubt can lead to error and are often

---

[6] The defendant's attorney stated: "Your Honor, the defendant takes exception to your correction on the scales of justice because you indicated if the evidence isn't equal—if the evidence is equal, the State hasn't prevailed, and it's my position that the logical inference that can be drawn from that is that if the scales are tipped, however slightly, the State has prevailed . . . ."

28

more confusing than helpful." *United States* v. *Clay,* 476 F.2d 1211, 1215 (9th Cir. 1973); see *State* v. *Carr,* 108 Ariz. 203, 495 P.2d 134 (1972); *People* v. *Garcia,* 54 Cal. App. 3d 61, 126 Cal. Rptr. 275 (1975), cert. denied, 426 U.S. 911, 96 S. Ct. 2238, 48 L. Ed. 2d 838 (1976), and cases cited therein. "[C]ourts . . . [should] not use language in instructions which can be understood as diluting or in any way impairing the constitutional require-ment of proof beyond a reasonable doubt." *United States* v. *Pine,* 609 F.2d 106, 108 (3d Cir. 1979).

After reading and considering the entire charge as a whole, including the supplemental "correcting" portion, we conclude that the jury could easily have been confused as to the proper burden which the state had to sustain. "While we are not receptive to quibbling attacks on the 'reasonable doubt' charge, the Government's burden of persuasion must be made clear." *United States* v. *Hughes,* 389 F.2d 535, 537 (2d Cir. 1968), cert. denied, 396 U.S. 867, 90 S. Ct. 145, 24 L. Ed. 2d 120 (1969). Under the charge, the jury could have found the defendant guilty if they believed beyond a reasonable doubt that the "scale" had been *tipped* in favor of convic-tion. This is not the same as the constitutionally mandated standard of proof beyond a reasonable doubt. See, e.g., *United States* v. *Link,* 202 F.2d 592 (3d Cir. 1953); *People* v. *Garcia,* supra; *Com-monwealth* v. *Milliner,* 219 Pa. Super. 359, 281 A.2d 763 (1971); see also *United States* v. *Hughes,* supra; *Hughes* v. *United States,* supra. Since the jury could easily have been misled by this analogy to the tipping of a scale, and could have found the

defendant guilty even if there was a reasonable doubt whether he had in fact committed the crimes, we find error.[7]

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.

---

[7] Since we find error, we need not address the defendant's other claims.