JOHN MCIVER *v.* WARDEN, STATE PRISON
(9897)

DALY, LANDAU and FREEDMAN, Js.

Argued March 31—decision released July 14, 1992

*Louis S. Avitabile,* special public defender, with whom, on the brief, was *Denise Dishongh,* for the appellant (petitioner).

*Jacqueline J. Footman,* assistant state's attorney, with whom, on the brief, was *Guy Wolf III,* assistant state's attorney, for the appellee (respondent).

FREEDMAN, J. The petitioner, John McIver, was found guilty, after a jury trial, of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), sexual assault in the first degree in violation of General Statutes § 53a-70 (a), and larceny in the sixth degree in violation of General Statutes § 53a-125b. The trial court sentenced the petitioner to a total effective term of twenty years imprisonment. The facts underlying the petitioner's conviction of these charges are fully set forth in *State* v. *McIver,* 201 Conn. 559, 518 A.2d 1386 (1986), where, on direct appeal, our Supreme Court upheld the petitioner's conviction.

While his direct appeal was pending, the petitioner, acting pro se at the time, filed a petition for a writ of habeas corpus in the Superior Court for the judicial dis-

trict of Tolland. The consolidated amended petition, filed in the habeas court in February, 1990, alleged prosecutorial misconduct, improper jury instructions and ineffective assistance of appellate counsel. After a full hearing on the merits, the habeas court, *Dunn, J.,* denied the petitioner's application for relief. The habeas court then granted the petitioner certification to file an appeal in this court. General Statutes § 52-470 (b).[1] We affirm the judgment of the habeas court.

The petitioner claims that the habeas court improperly (1) concluded that he was not deprived of a fundamentally fair trial by the cumulative effect of prosecutorial misconduct in combination with insufficient and erroneous trial court instructions on inferences, circumstantial evidence, negative evidence, proof beyond a reasonable doubt and the credibility of the victim, (2) concluded that the petitioner's right to effective assistance of counsel was not violated where the petitioner's appellate counsel failed to raise on appeal the issue of the trial court's erroneous charge on proof beyond a reasonable doubt, (3) concluded that there was a necessary or reasonable continuance of the trial that tolled the 120 day speedy trial statute, and (4) denied the petitioner's motion to open the judgment.

The petitioner's first claim was not raised at trial or on direct appeal and therefore must fail. With respect to claims raised for the first time in a habeas corpus petition, our Supreme Court has stated: "We are persuaded that habeas review of constitutional claims

---

[1] General Statutes § 52-470 (b) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought in order to obtain his release by or on behalf of one who has been convicted of crime may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or a judge of the supreme court or appellate court to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge so certifies."

never raised in the trial court, in violation of our rules of practice, would thrust too great a burden on our criminal justice system." *Johnson* v. *Commissioner,* 218 Conn. 403, 417, 589 A.2d 1214 (1991). In *Johnson* v. *Commissioner,* supra, therefore, the court "adopted the federal 'cause and prejudice' standard from *Wainwright* [v. *Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)] for habeas review of constitutional claims not raised at trial." *Giannotti* v. *Warden,* 26 Conn. App. 125, 129, 599 A.2d 26 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992). "The *Wainwright* standard requires that the petitioner show good cause for the failure to preserve a claim at trial and actual prejudice resulting from the alleged constitutional violation. . . . The petitioner must establish both elements to obtain relief. . . ." (Citations omitted.) Id.

When the habeas court fails to make a finding on the record regarding cause and prejudice, "*Giannotti* permits this court to review the record in an effort to determine whether any evidence of cause and prejudice has been provided by a petitioner. Where no evidence has been provided, this court can independently conclude that the petitioner has failed to meet the cause and prejudice test. Where, however, there has been evidence presented on the issues of cause and prejudice and the habeas court does not make a finding on the record that the petitioner has either met or failed to meet his burden of establishing cause and prejudice, we will not review the inadequately preserved constitutional claim on the merits. Rather, we will remand the case to the habeas court for it to determine whether the petitioner has satisfied his burden of establishing cause and prejudice." *Daniels* v. *Warden,* 28 Conn. App. 64, 72, 609 A.2d 1052 (1992).

A review of the habeas record reveals that the petitioner failed to demonstrate any reason why the prosecutor's remarks and the jury instructions were not

previously challenged, and that he failed to demonstrate what prejudice these alleged improprieties caused him. "We see no reason why the petitioner could not have advanced this constitutional claim at the time of appeal." *Giannotti* v. *Warden,* supra, 128. We conclude, therefore, that even though the habeas court did not address the issue of cause and prejudice, the record is clear that the petitioner failed to provide that court with evidence of either cause for his failure to raise these issues at trial or any prejudice resulting therefrom. Thus, he is not entitled to review of these claims on the merits. See *Daniels* v. *Warden,* supra, 73.

The petitioner next claims that the habeas court improperly concluded that the petitioner was not deprived of his right to the effective assistance of appellate counsel. Specifically, he claims that the habeas court incorrectly concluded that his appellate counsel's failure to challenge the trial court's instructions on reasonable doubt, namely, that "if you find the evidence in equipoise or equal, the state has not sustained its burden," did not constitute ineffective assistance of counsel. The petitioner took no exception to this charge at trial. At the habeas trial, the petitioner's appellate counsel on direct appeal testified that he did not challenge the jury instructions on appeal because he believed "taking the charge as a whole that it was a fair and correct statement of the law as of December, 1985, and October, 1986, and not subject to reversal on appeal."

"The right to effective assistance of counsel is guaranteed by the sixth and fourteenth amendments to the United States constitution . . . ."[2] *Levine* v. *Manson,*

---

[2] Because the petitioner has couched his ineffective assistance claims entirely in sixth amendment terms and has provided no separate and independent analysis of our state constitutional provisions, we confine our discussion to his rights under the sixth and fourteenth amendments. *Phillips* v. *Warden,* 220 Conn. 112, 131 n.15, 595 A.2d 1356 (1991).

195 Conn. 636, 639, 490 A.2d 82 (1985). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland* v. *Washington,* 466 U.S. 668, 687–88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "There are two components of a claim of ineffective assistance of counsel. 'First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense.' [Id., 687]." *Johnson* v. *Commissioner,* supra, 424. This standard also applies to claims, such as the one here, of ineffective assistance of appellate counsel. *Valeriano* v. *Bronson,* 209 Conn. 75, 84, 546 A.2d 1380 (1988).

The petitioner relies on *State* v. *Smith,* 183 Conn. 17, 438 A.2d 1165 (1981), in support of his claim that his appellate counsel's performance was deficient. In *Smith,* our Supreme Court rejected the trial court's instruction that provided in pertinent part: " 'Now, if you find that the state has presented evidence so that the scale tips in favor of the state, you still must be convinced that the defendant is guilty beyond a reasonable doubt. I am sorry that I cannot give you graphic or pictorial description as to what is required for the state to prove their case beyond a reasonable doubt by indicating on the scale whether it would be an inch or a foot or a yard or a mile. I can't do that, so please bear in mind that if the evidence is in equipoise or equal, the state has not sustained its burden, and in that case, you would find the defendant not guilty. For the state to prevail, you must find the scales tipped beyond a reasonable doubt.' " Id., 26–27. Our Supreme Court reversed the defendant's conviction, concluding that "[u]nder the charge, the jury could have found the defendant guilty if they believed beyond a reasonable doubt that the 'scale' had been *tipped* in favor of con-

viction. . . . Since the jury could easily have been misled by this analogy to the tipping of a scale, and could have found the defendant guilty even if there was a reasonable doubt whether he had in fact committed the crimes, we find error." (Citations omitted.) Id., 28–29. It is clear that the court's reversal in *Smith* was based on the tipping of the scale analogy.

The petitioner claims that his appellate counsel's failure to challenge the equipoise instruction, on the basis of *Smith*, constitutes ineffective assistance of appellate counsel. In the petitioner's trial, however, the trial court did not include the tipping of the scale analogy in its instructions. *State* v. *Smith*, supra, therefore, is inapposite to the present matter. Rather, our analysis and disposition of this issue is guided by the well established principles for reviewing jury instructions. "[A] court reviewing a jury charge must review the charge as a whole and not analyze small portions in isolation. . . . The ultimate test of a court's instructions is whether, taken as a whole, they fairly and adequately present the case to a jury in such a way that injustice is not done to either party under the established rules of law." (Citations omitted; internal quotation marks omitted.) *Magnotti* v. *Meachum*, 22 Conn. App. 669, 682, 579 A.2d 553 (1990). With this standard in mind, we cannot say that the conclusion of the petitioner's appellate counsel was unreasonable.

The trial court accurately described the meaning of reasonable doubt at length in the petitioner's trial.[3] The

---

[3] The trial court, in its charge to the jury on the meaning of reasonable doubt, also instructed the jury as follows: "Now, the phrase reasonable doubt has no technical or unusual meaning. You can arrive at the real meaning of it by emphasizing the word, reasonable. A reasonable doubt is a doubt for which a valid reason can be assigned. It is a doubt which is something more than a guess or surmise. It is not a conjecture or a fanciful or capricious doubt. A reasonable doubt is not a doubt which is raised by someone

charge as a whole made clear to the jury the meaning of reasonable doubt. The portion of the instruction challenged by the petitioner is similar to the two inference instruction, which our Supreme Court has approved when the jury has otherwise been properly instructed on the state's burden of proof. See *State* v. *Dyson,* 217 Conn. 498, 504, 586 A.2d 610 (1991).

Furthermore, the petitioner's appellate counsel chose several other substantive claims to raise on appeal. "While an appellate advocate must provide effective assistance, he is not under an obligation to raise every conceivable issue. ' "A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." ' *Valeriano* v. *Bronson,* supra, 89." *Magnotti* v. *Meachum,* supra, 682–83. The petitioner's appel-

simply for the sake of raising doubts. Nor is it a doubt suggested by the ingenuity of counsel or a juror which is not warranted by the evidence. A reasonable doubt, in other words, is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence. It is such a doubt as in the serious affairs which concern you in every day life you would pay some heed to. Another way of defining it is this. A reasonable doubt is not a slight doubt. It is not a possible doubt. It is not a conjecture or a guess, nor does it arise from feelings of sympathy or pity for anyone who may be affected by your verdict. A reasonable doubt is one which is based on the evidence and flows from the evidence or lack of evidence. It is a doubt which is based on reason. It is a doubt founded on reason as contrasted with purely speculative doubt.

"Now, absolute certainty, of course, in the affairs of life is almost never attainable and the law does not require absolute certainty on the part of the jury before it returns a verdict of guilty. What the law does require, however, is that after hearing all the evidence if there is something in that evidence or lack of evidence which leaves in the minds of the jury as reasonable men and women a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of that doubt and be acquitted. It necessarily follows as I have told you, that if any fact or element bears equally two ways, one towards innocent and the other towards guilt, that it must be given that direction which tends towards innocent. In other words, it is incumbent on the State to negative every supposition not in itself unreasonable or improbable with the innocence of the accused. If you can in fact reconcile all of the facts proved with any reasonable theory consonant with the innocence of the accused, then, of course, you cannot find him guilty."

late counsel selected for review those issues that he believed were the strongest and most likely to result in reversal. This decision fell "within the range of competence displayed by lawyers with ordinary training and skill . . . ." (Citations omitted; internal quotation marks omitted.) *Levine* v. *Manson,* supra.

The petitioner also claims that he was deprived of the effective assistance of counsel from both his appellate counsel and trial counsel because they failed to raise and press a statutory speedy trial claim. The habeas court disposed of this claim, however, by concluding that there was a necessary and reasonable continuance of the petitioner's initial trial, and that such continuance tolled the petitioner's right to a trial within 120 days from his request for a speedy trial pursuant to General Statutes § 54-82c. The petitioner claims that this conclusion by the habeas court was improper.

At the outset, we must set forth our standard of review. "Although the underlying historical facts found by the habeas court may not be disturbed unless they were clearly erroneous, whether those facts constituted a violation of the petitioner's rights under the sixth amendment 'is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case.' *Cuyler* v. *Sullivan,* 446 U.S. 335, 342, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). As such, that question requires plenary review by this court unfettered by the 'clearly erroneous' standard. Id." *Phillips* v. *Warden,* 220 Conn. 112, 131, 595 A.2d 1356 (1991).

Additional facts are relevant for a proper disposition of this issue. The crime underlying the petitioner's conviction in this case derived from an incident that occurred on December 30, 1983. At that time, the petitioner was on parole from a previous conviction. When

he was arrested for the December 30, 1983 incident, therefore, he was returned to jail to complete his sentence for the previous crime. On March 19, 1984, the petitioner, pursuant to § 54-82c,[4] properly requested a speedy trial as a sentenced prisoner. On April 5, 1984, the petitioner's attorney filed a separate motion for a speedy trial on constitutional grounds, which the trial court subsequently denied.

On July 3, 1984, the state moved for a continuance of the petitioner's trial. The trial court denied the motion. On July 17, 1984, the parties appeared before

---

[4] General Statutes § 54-82c provides: "(a) Whenever a person has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment or information against such prisoner, he shall be brought to trial within one hundred twenty days after he has caused to be delivered, to the state's attorney or assistant state's attorney of the judicial district or geographical area, in which the indictment or information is pending, and to the appropriate court, written notice of the place of his imprisonment and his request for final disposition to be made of the indictment or information. For good cause shown in open court, the prisoner or his counsel being present, the court may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the warden, community correctional center administrator or other official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the parole board relating to the prisoner.

"(b) The written notice and request for final disposition referred to in subsection (a) hereof shall be given or sent by the prisoner to the warden, community correctional center administrator or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

"(c) The warden, community correctional center administrator or other official having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment or information against him concerning which the warden, administrator or other official has knowledge and of his right to make a request for final disposition thereof.

"(d) Escape from custody by the prisoner subsequent to his execution of the request for final disposition referred to in subsection (a) hereof shall void the request."

the court. At that time, both the state and the petitioner represented to the court that each side was prepared to commence trial. The court had pending before it, however, various motions involving this matter, including a motion by the petitioner to dismiss the charges because of an allegedly illegal arrest. The petitioner and the state agreed that the court's disposition of this motion may have been dispositive of the entire prosecution and, therefore, the state without objection from the petitioner, requested "the court to declare the case on trial at this point so that there is no question that the statute has been complied with." The trial court granted the state's request, declared the case on trial, and then proceeded to consider the petitioner's various pretrial motions. Jury selection actually commenced on July 19, 1984, and the jury panel was finally sworn in on July 26, 1984.

On direct appeal from his conviction, the petitioner raised the issue of the state's failure to commence his trial within 120 days of his request, as required by § 54-82c. At oral argument, however, the petitioner abandoned this issue because the state convinced the petitioner's appellate counsel that the 120 days had not expired because his motion for a speedy trial actually was filed on April 5, 1984. Apparently, the state did not see the March 19, 1984 request in the trial court file, and it convinced the petitioner that the only speedy trial motion he made was filed on April 5, 1984, a date that effectively negated the petitioner's claim under § 54-82c. Sometime after the conclusion of his direct appeal, the petitioner realized the mistake made by the state and accepted by his appellate counsel, and he raised this issue in his habeas petition.

Section 54-82c requires that if a defendant already serving a prison term files a speedy trial request with respect to other charges, "he shall be brought to trial within 120 days . . . ." The purpose of §§ 54-82c and

54-82d is to "allow a prisoner who was committed to jail to ask that he be tried within 120 days on any information or indictment pending against him." Remarks of Senator John H. Filer, 7 S. Proc., Pt. 6, 1957 Sess., p. 3712, on H.B. 683. Section 54-82c, however, permits the trial court to grant "any necessary or reasonable continuance" for good cause shown in open court.

It is undisputed that the last day for compliance with § 54-82c was July 17, 1984. The habeas court, however, concluded that because both the state and the petitioner's attorney agreed to proceed on the motions first, despite their knowledge that July 17 was the 120th day, and because of their acquiescence in the trial court's declaration that the matter was on trial, there was a necessary and reasonable continuance for good cause shown in open court pursuant to § 54-82c. We agree.

Although the mere declaration by a trial judge that a case is on trial does not a trial make, it is clear from the record that the petitioner and his trial attorney knew that July 17 was the 120th day, and that they had the right to pursue their claim for dismissal under §§ 54-82c and 54-82d. It is also clear from the record and the testimony of witnesses at the habeas trial that the state was ready, willing and able to commence trial on that date, and that the petitioner's attorney opted to forego his speedy trial claim because (1) he knew that if he raised it, he would not prevail because the court simply would have commenced trial by instituting jury selection, and (2) he believed that he was going to prevail on his motion to dismiss because of an illegal arrest. Because the motion to dismiss based on the illegal arrest might have been dispositive without first going through the process of selecting a jury, both the state and the defendant agreed, in open court, to have a hearing and to obtain a ruling from the court on that motion before a trial actually started.

The trial court's declaration that the matter was on trial, therefore, was the functional equivalent of the granting of a reasonable continuance for good cause shown in open court, even though the trial court did not use the talismanic word "continuance." See, e.g., *State* v. *Velez*, 17 Conn. App. 186, 190–91, 551 A.2d 421 (1988), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989). We therefore find nothing improper with the conclusion of the habeas court, and because of this conclusion, neither the trial attorney nor the appellate counsel's failure to raise the speedy trial issue deprived the petitioner of effective assistance.

Finally, the petitioner claims that the trial court improperly denied his motion to open the judgment. Testimony at the petitioner's habeas trial suggested that the petitioner was technically released from prison on his prior sentence on July 10, 1984, because of good time credits that should have been credited to him. If that were true, the petitioner would not have any speedy trial claim under § 54-82c because he would then have been held after that date on a pretrial detainer. *State* v. *Harris*, 14 Conn. App. 244, 249–50, 540 A.2d 395 (1988).

In its December 21, 1990 memorandum of decision, the habeas court, after concluding that there was a reasonable and necessary continuance, also stated: "Further, the petitioner was released from prison on July 10, 1984, so § 54-82c probably did not apply. He was held after that date on a (pretrial) detainer." On April 2, 1991, the petitioner filed a motion to open the judgment. The substance of this motion was that the petitioner had discovered, through additional evidence, that the state had incorrectly calculated the good time credits to which the petitioner was entitled so that he was not, in fact, being held on a pretrial detainer as of July 17, 1984. The habeas court denied the motion

to open because it concluded that even if the petitioner was correct, it made no difference to the court's opinion because the habeas court had also concluded that there was a necessary and reasonable continuance for good cause shown.

"The decision to reopen the testimony rests within the sound discretion of the trial court. *State* v. *Sanchez,* 200 Conn. 721, 729–30, 513 A.2d 653 (1986)." *Ostolaza* v. *Warden,* 26 Conn. App. 758, 778, 603 A.2d 768 (1992). "The criteria for a court to open a judgment is analogous to the conditions needed for a petition for a new trial on grounds of newly discovered evidence. *Shelton Sewer Authority* v. *DeFilippo,* 2 Conn. App. 355, 361, 478 A.2d 623 (1984)." *Buster* v. *Commissioner,* 26 Conn. App. 48, 51, 596 A.2d 943 (1991). One of those criteria is that the "evidence . . . is likely to produce a different result." *Buster* v. *Commissioner,* supra, 51–52. Because of the habeas court's conclusion that there was a necessary and reasonable continuance for good cause shown, this new evidence, even if true, would not have produced a different result. We conclude, therefore, that the habeas court did not abuse its discretion in refusing to open the judgment.

The judgment is affirmed.

In this opinion the other judges concurred.