## STATE OF CONNECTICUT *v.* JUSTO CRUZ
## (12261)

FOTI, HEIMAN and SPEAR, Js.

Argued December 13, 1993—decision released March 29, 1994

*Kenneth W. Simon,* assistant public defender, for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Edward R. Narus,* assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant, Justo Cruz, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General

Statutes § 53a-134 (a) (3).[1] The defendant claims that the trial court (1) improperly instructed the jury that a reasonable doubt is not "a slight doubt," (2) unfairly marshaled the evidence during its charge to the jury, thereby depriving the defendant of a fair trial, and (3) gave an unbalanced and coercive charge after the jury reported that it was deadlocked five to one. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 1, 1992, at approximately 7:40 p.m., the defendant entered the Shell Food Mart at the corner of Sisson Avenue and Park Street in Hartford. After being in the store for about five minutes, he asked the clerk, Arnaldo Vega, for change for a dollar. When Vega opened the cash register, the defendant started to take money from the drawer. Vega attempted to close the drawer, but drew back after the defendant brandished a knife and said, "I'll kill you." After taking several bills from the cash register, the defendant left the store and fled toward Sisson Avenue.

Officer Oscar Delima of the Hartford police department was dispatched to the scene, where Vega described the robber as a Hispanic male with a light moustache, about five feet, nine inches tall, and weighing approximately 155 pounds. The robber wore a blue hooded sweatshirt with orange lettering and light colored jeans. Delima broadcast Vega's description of the robber over his police radio. Shortly after receiving the broadcast, Detective Eddie Rivera observed the defendant emerge from a driveway on Sisson Avenue. The defendant, who fit Vega's description, was carrying a white plastic bag. He ran across the street and entered

---

[1] General Statutes § 53a-134 (a) provides in pertinent part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

the passenger side of a red Chevrolet Cavalier waiting at a traffic light. Rivera pulled the red car over as it entered the on-ramp to I-84 east. Within minutes, Officer David Wyman arrived on the scene to assist Rivera. When Wyman approached the car, he saw the defendant stuff something down his shirt. The defendant was then placed in Wyman's cruiser and Vega was brought to the scene. Vega identified the defendant as the person who had robbed the store, although he now had on different clothes. A search of the white plastic bag revealed light blue jeans and a blue hooded sweatshirt with orange lettering that Vega identified as the clothing worn by the robber. The defendant was then placed under arrest.

At trial, the defendant presented an alibi defense claiming that when the robbery took place, he had been drinking with his nephew, Johnny Sanchez, at Sanchez' house at 145 Sisson Avenue. Sanchez had called Dickie Madley to give the defendant a ride because the defendant was drunk. Madley was the driver of the red car.

After two days of deliberations, the jury reported that it was deadlocked.[2] The court then gave a "Chip Smith charge" which is frequently given to juries that report an impasse. *State* v. *Smith,* 49 Conn. 376, 386 (1881). The instruction charged the jurors to reach their own conclusion and not simply to acquiesce in the conclusions of the others. The instruction also charged each juror, especially those in the minority, to reexamine carefully his or her position with due regard and deference to the opinion of the others. A verdict of guilty was returned the next day.

## I

The defendant first claims that the trial court improperly instructed the jury that a reasonable doubt is not

---

[2] The note from the jury stated: "We can't come to a unanimous decision as to the guilt of the suspect. The vote is five to one."

a "slight doubt."[3] The defendant took no exception to this language at trial and challenges the instruction for the first time on appeal. The defendant can prevail on an unpreserved claim only if all of the conditions set out in *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), are satisfied. The *Golding* criteria are as follows: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id.

Only the third factor is disputed by the state. The defendant argues that the court's instruction was an improper quantification of the reasonable doubt standard that resulted in a lessening of the state's burden of proof, thereby clearly depriving the defendant of a fair trial. We disagree.

The defendant relies principally on *Cage* v. *Louisiana,* 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990), which disapproved instructions describing reasonable doubt as "such doubt as would give rise to a grave uncertainty," and "actual substantial doubt" and "a

---

[3] The court's charge on reasonable doubt was as follows: "Each element of the charge against the defendant must be proved by the state by a reasonable doubt. [If] proof of even one element of the charge is lacking, you must find the defendant not guilty. . . . A reasonable doubt is not a slight doubt, or any possible doubt, nor is it a surmise, a guess or a conjecture, nor does it arise from feelings of sympathy or pity for the defendant or anyone who may be affected by your verdict. And it doesn't arise simply because a fact is contested. A reasonable doubt is one which is founded on the evidence and flows naturally from the evidence or lack of evidence. It is, in short, a doubt based on reason. In this connection, it is not necessary for the state to prove the absolute guilt of the defendant or guilt with certainty. Each element which is essential to establish the defendant's guilt must be proved by facts or circumstances beyond a reasonable doubt."

moral certainty." Id., 40. The United States Supreme Court stated that "[i]t is plain to us that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to 'moral certainty,' rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." Id., 41.

The defendant argues that the words "a slight doubt" are the "mirror image" of the words "substantial doubt." He claims that, by instructing the jury that reasonable doubt is something more than a slight doubt, it in effect defined reasonable doubt as substantial doubt, a definition deemed improper under *Cage* v. *Louisiana,* supra. This court addressed the use of the words "substantial doubt" in a "reasonable doubt" charge in *State* v. *Dizon,* 28 Conn. App. 444, 611 A.2d 432 (1992). We held, after examining the charge as a whole, that there was no constitutional violation by this sole misstatement in a lengthy reasonable doubt charge. Id., 449. This one statement did not rise to the level of the several misstatements contained in the jury instructions in *Cage* v. *Louisiana,* supra. *State* v. *Dizon,* supra, 448–49.

Although the reasonable doubt instructions here were not as lengthy as those in *State* v. *Dizon,* supra, the same reasoning applies. Jury instructions must be examined in their entirety and not clinically dissected. *State* v. *Fernandez,* 27 Conn. App. 73, 84–87, 604 A.2d 1308, cert. denied, 222 Conn. 904, 606 A.2d 1330 (1992); *State* v. *Toczko,* 23 Conn. App. 502, 507, 582 A.2d 769 (1990). The test is whether reasonable jurors would, on the whole, understand the charge. *Francis* v. *Frank-*

*lin,* 471 U.S. 307, 315–16, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985); see also *State* v. *Mason,* 186 Conn. 574, 585–86, 442 A.2d 1335 (1982).

The defendant relies on cases where attempts to quantify the concept of reasonable doubt have been struck down. Instructions in those cases, however, attempted to quantify reasonable doubt by using examples that could have misled the jury. In *State* v. *Smith,* 183 Conn. 17, 24–27, 438 A.2d 1165 (1981), the trial court used an example of "tipping" the scales. Even though the court, in a correcting instruction, said that the scales had to be " 'tipped beyond a reasonable doubt,' " the court also stated that it could not describe the necessary tipping as " 'an inch or a foot or a yard or a mile.' " Id., 26–27. This instruction was held to be reversible error as the jurors could have found guilt if they "believed beyond a reasonable doubt that the 'scale' had been *tipped* in favor of conviction. This is not the same as the constitutionally mandated standard of proof beyond a reasonable doubt." (Emphasis in original.) Id., 28.

In *State* v. *DelVecchio,* 191 Conn. 412, 464 A.2d 813 (1983), the trial court instructed the jury that "[y]ou don't have to go a hundred yards for a guilty finding. You got to go somewhere, I suppose, beyond the fifty yard line; where it is in there is up to you to decide." Id., 417–18. The court's football field analogy was not cured by an accurate statement of the law. Our Supreme Court held that it was reasonably possible that the jury was misled by the erroneous instruction. Id., 424–25.

In *McCullough* v. *State,* 99 Nev. 72, 657 P.2d 1157 (1983), the trial court attempted to illustrate the concept of reasonable doubt with a numerical "scale." Id., 73. The instruction in which the court quantified rea-

sonable doubt as " 'seven and a half, if you had to put it on a [zero to ten] scale' " was struck down on appeal. Id., 74.

The problem that arises when courts amplify reasonable doubt instructions is well stated in *United States* v. *Pinkney,* 551 F.2d 1241 (D.C. Cir. 1976). The court observed that "[j]udicial attempts to clarify the meaning of the phrase 'reasonable doubt' by explanation, elaboration or illustration . . . more often than not tend to confuse or mislead [the jury]." Id., 1244. Moreover, "the jury is likely to give undue weight to examples, since they are easier to comprehend, and it may simply compare the defendant's conduct with the example." *People* v. *Shepherd,* 63 Mich. App. 316, 322, 234 N.W.2d 502 (1975).

In this case, the trial court used no such potentially misleading examples. Unlike *Cage* v. *Louisiana,* supra, where there were several incorrect statements in the reasonable doubt charge, here there was only one misstatement. That brief statement came at the very beginning of an otherwise unchallenged statement of the law governing reasonable doubt. Such an error in the jury charge is harmless if, in the context of the entire charge, it is not reasonably possible that the jury was misled. *State* v. *Ortiz,* 217 Conn. 648, 661 n.11, 588 A.2d 127 (1991); *State* v. *Carrione,* 188 Conn. 681, 685, 453 A.2d 1137, cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1982); *State* v. *Willis,* 24 Conn. App. 678, 683 n.5, 591 A.2d 445 (1991), aff'd, 221 Conn. 518, 605 A.2d 1359 (1992). It is established law "that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp* v. *Naughten,* 414 U.S. 141, 146–47, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *State* v. *Cooper,* 227 Conn. 417, 444, 630 A.2d 1043 (1993); *State* v. *Crafts,* 226 Conn. 227, 249, 627 A.2d

431 (1993); *State* v. *Andrews,* 29 Conn. App. 533, 540, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993).

We conclude that the error, if any, in the use of the phrase "slight doubt" in the context of the entire charge on reasonable doubt, could not reasonably have misled the jury. As the defendant has failed to establish the third prong of the *Golding* test, he cannot prevail on this claim.

## II

The defendant next claims that the trial judge unfairly marshaled the evidence in a manner that was "harmfully prejudicial" to his defense. We are not persuaded.

"A trial court often has not only the right, but also the duty to comment on the evidence. *State* v. *Hernandez,* 218 Conn. 458, 461–62, 590 A.2d 112 (1991). Fair comment does not become improper merely because it tends to point out strengths, weaknesses, or difficulties of a particular case. *State* v. *Pollitt,* 205 Conn. 132, 157, 531 A.2d 125 (1987) . . . . The trial court may, at its discretion, call the attention of the jury to the evidence, or lack of evidence, bearing on any point in issue and may comment on the weight of the evidence as long as it does not direct or advise the jury how to decide the matter. *State* v. *Shannon,* 212 Conn. 387, 408, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989)." (Citation omitted; internal quotation marks omitted.) *State* v. *Ash,* 33 Conn. App. 782, 798, 638 A.2d 633 (1994).

The trial court instructed the jury at the outset of its charge that the jury's recollection of the evidence, not the court's, must govern. The court also instructed the jury that its comments on the evidence were intended to illustrate the principles of law involved in

the charge. The court reviewed the testimony of all of the witnesses, and in none of the instructions did the court indicate whether the court believed or disbelieved the evidence. There was no favorable or unfavorable comment on any of the witnesses. There was simply more evidence from the state on which the court could comment than from the defendant.

"In evaluating the court's charge, we are cognizant that [t]he test of a charge is not whether it applies pertinent rules of law to every ramification of facts conceivable from the evidence. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [*State* v. *Hernandez*, supra, 465]; see also *State* v. *Rumore*, 28 Conn. App. 402, 411, 613 A.2d 1328 (1992); *State* v. *Lee*, 32 Conn. App. 84, 103–105, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993)." (Citations omitted; internal quotation marks omitted.) *State* v. *Ash*, supra, 799.

The trial court properly commented on the evidence and did not prejudice the defendant or deprive him of a fair trial.

## III

The defendant's last claim is that the trial court gave an unbalanced and coercive charge after the jury reported that it was deadlocked.

The defendant conceded at oral argument that he failed to take an exception to this charge pursuant to Practice Book § 852[4] and further failed to request

---

[4] Practice Book § 852 provides in pertinent part: "The [appellate] court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. . . ."

review under *State* v. *Golding,* supra. As this claim was not properly preserved, we will not review it.

The judgment is affirmed.

In this opinion the other judges concurred.