# JAMES CALVIN TILLMAN *v.* COMMISSIONER OF CORRECTION
## (AC 17461)

Lavery, Spear and Sullivan, Js.

Argued March 29—officially released September 7, 1999

*Joseph W. McQuade,* special public defender, for the appellant (petitioner).

*Carolyn K. Longstreth,* assistant state's attorney, with whom, on the brief, were *Patricia A. Swords,* state's attorney, and *John J. Dropick, Sr.,* former assistant state's attorney, for the appellee (respondent).

*Opinion*

SULLIVAN, J. The petitioner, James Calvin Tillman, appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly determined that he had not sustained his burden of proving that his trial and appellate counsel were ineffective.

The following facts and procedural history are necessary to our decision.[1] In 1989, a jury convicted the petitioner of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B), sexual assault in the first degree in violation of General Statutes § 53a-70 (a), robbery in the third degree in violation of General Statutes § 53a-136 (a), assault in the third degree in violation of General Statutes § 53a-61 (a) (1), and larceny in the second degree in violation of General Statutes § 53a-123 (a) (3). The trial court imposed a total effective sentence of forty-five years. On direct appeal, our Supreme Court affirmed the judgment of conviction. *State* v. *Tillman,* 220 Conn. 487, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992).

---

[1] Our state Supreme Court's opinion in the direct appeal provides a full exposition of the facts that the jury reasonably could have found at trial. See *State* v. *Tillman,* 220 Conn. 487, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992).

In his petition for a writ of habeas corpus, the petitioner based his ineffective assistance of counsel claims on the jury selection method, which, he claims, both trial and appellate counsel failed to challenge adequately. He argues that effective assistance would have exposed the unconstitutional methods of jury selection then in place at the Hartford Superior Court where he was tried.

During jury selection, the petitioner, whose race is African-American and Native American, noted the absence of black males and the presence of only one Hartford resident among the potential jurors. Christopher Cosgrove, the petitioner's trial counsel, raised this issue with the trial court. Cosgrove questioned Ruth Kviesis, one of the two juror clerks then working for the Hartford Superior Court. He thereafter represented to the court that the jury clerks were excusing jurors for reasons of economic hardship, including daily wage earners, persons not being paid by their employers while serving and self-employed persons. Kviesis opined to Cosgrove and later to the habeas court that a disproportionate number of minorities would be excluded because she believed minorities were more likely to occupy lower and hourly paying positions that would not compensate them for their jury service. As the habeas court noted, this was speculation and assumption on her part. In presenting this to the trial court, Cosgrove acknowledged that the panels in a criminal trial simultaneously occurring in an adjacent courtroom, which were drawn from the same array, contained five black persons, three of whom were selected to serve.

Kviesis testified before the habeas court that, in 1989, 360 potential jurors were summoned every two weeks to serve for four weeks. The jury clerks would receive letters from potential jurors asking to be relieved of jury duty for a variety of reasons. Although Kviesis

opined that excusals for economic reasons had a disproportionate impact on minorities, there is no evidence that she had any basis for this opinion other than speculation and assumption. Moreover, there is no indication that the jury clerks were aware of the race of those potential jurors who were excused.

I

The petitioner first claims that the habeas court improperly determined that he had not met his burden of demonstrating that he was rendered ineffective assistance of counsel by his trial counsel's failure to provide an adequate offer of proof, or to request an evidentiary hearing or a continuance to gather proof of unconstitutional jury selection methods.

" 'The right to effective assistance of counsel is guaranteed by the sixth and fourteenth amendments to the United States constitution . . . .' *Levine* v. *Manson*, 195 Conn. 636, 639, 490 A.2d 82 (1985). 'When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.' *Strickland* v. *Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). 'There are two components of a claim of ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." [Id., 687].' *Johnson* v. *Commissioner*, [218 Conn. 403, 424, 589 A.2d 1214 (1991)]." *McIver* v. *Warden*, 28 Conn. App. 195, 199–200, 612 A.2d 103, cert. denied, 224 Conn. 906, 615 A.2d 1048 (1992).

"To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [he] was not functioning as the counsel guaranteed the [petitioner]

by the Sixth Amendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . .

"To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . *Johnson* v. *Commissioner of Correction*, 36 Conn. App. 695, 701–702, 652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995)." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 51 Conn. App. 818, 821, 725 A.2d 971 (1999).

### A

The testimony elicited at the habeas proceeding failed to disclose that the petitioner suffered any prejudice as a result of his trial counsel's conduct or that such conduct fell below the acceptable level. Cosgrove investigated the jury selection system by questioning Kviesis. According to him, she described the method through which potential jurors could be excused, but she offered nothing except her opinion of the disproportionate impact on minorities to suggest that there was any sort

of exclusion of black jurors. At the habeas hearing, he testified that he also had learned "that there was a murder trial going on next door, which did have—it appeared to be a substantial number of black jury panel members—panel members, who would have come from the same array as we drew from. So, again, [he] did not find any evidence of any systematic exclusion of any funneling away from our panels to benefit or . . . to influence other panels." Cosgrove investigated, considered the issue and ultimately decided not to pursue it. We cannot conclude that this conduct fell below the sixth amendment standard.

### B

The petitioner also has failed to show that the outcome of his trial would have been different but for the conduct of Cosgrove.

### 1

"[T]o establish a violation of his federal constitutional right to a jury drawn from a fair cross section of the community, the defendant must demonstrate the following: '(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.' *Duren* v. *Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979); *State* v. *Robinson*, [227 Conn. 711, 717–18, 631 A.2d 288 (1993)]." *State* v. *Webb*, 238 Conn. 389, 450, 680 A.2d 147 (1996).

Our Supreme Court addressed and found evidence wanting of both the "distinctive" group requirement under the due process analysis of *Duren* v. *Missouri*, supra, 439 U.S. 357, and of the suspect class requirement

of *State* v. *Nims*, 180 Conn. 589, 596, 430 A.2d 1306 (1980). *State* v. *Tillman*, supra, 220 Conn. 487. Not only was this issue covered by the Supreme Court, there was no evidence offered at the habeas hearing that was not considered by the Supreme Court.

2

General Statutes (Rev. to 1989) § 51-217 (c) (2) provides that the jury administrator "may determine . . . whether any person may be excused [from jury service] for extreme hardship." Section 51-217a authorizes only the court, rather than the jury administrator or clerks, to dismiss those persons who would suffer extreme hardship. The petitioner alleges that his due process rights were violated by the jury selection method actually existing whereby jury clerks excused potential jurors without any court participation in the process.

Because habeas corpus proceedings are not an additional forum for asserting claims that should properly be raised at trial or in a direct appeal, a petitioner must meet the "cause and prejudice" standard of *Wainwright* v. *Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), for determining the reviewability of habeas claims that were not properly pursued on direct appeal. See *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 132, 629 A.2d 413 (1993). "The petitioner must show good cause for his failure to preserve a claim at trial and actual prejudice resulting from the alleged constitutional violation." *Daniels* v. *Warden*, 28 Conn. App. 64, 71, 609 A.2d 1052, cert. denied, 223 Conn. 924, 614 A.2d 820 (1992).

Although the petitioner challenged the statute on other grounds on direct appeal,[2] he did not raise this

---

[2] The petitioner's reply brief in the direct appeal states in relevant part: "At trial, counsel argued that the jury clerk was impermissibly excusing potential jurors on the basis of their employment and that this practice likely resulted in the underrepresentation of minorities on jury arrays in Hartford. On the appeal, the [petitioner] has put that claim into the context of constitutional requirements by arguing that, absent some showing of

issue at trial or on direct appeal. The petitioner offered no cause for his failure to raise this issue earlier. Moreover, we are not satisfied that the petitioner has shown actual prejudice that resulted from the alleged constitutional violation. As we have noted previously, there has been no satisfactory demonstration that the jury selection method systematically excluded a distinct group or that any suspect class was excluded from the jury array.

## II

The petitioner also claims that the habeas court improperly determined that he failed to meet his burden of demonstrating ineffective assistance of appellate counsel by appellate counsel's failure to raise the argument that the trial court had a duty to conduct, sua sponte, an evidentiary hearing into potentially unconstitutional jury selection methods. We disagree.

"[T]o prevail on this claim, [the petitioner] must establish (1) that his appellate counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law, and (2) that this lack of competency contributed so significantly to the affirmance of his conviction as to have deprived him of a fair appeal, thus causing an unreliable conviction to stand. See *Valeriano* v. *Bronson*, 209 Conn. 75, 84–86, 546 A.2d 1380 (1988); accord *Strickland* v. *Washington*, [supra, 466 U.S. 687]. If the issues not raised by his appellate counsel lack merit, [the petitioner] cannot sustain even the first part of this dual burden since the failure to pursue unmeritorious claims cannot be

'extreme hardship'; General Statutes [Rev. to 1989] § 51-217 (c) (2); jurors simply cannot be excused solely because they will not be paid by their employers. The defendant, recognizing that the record is inadequate to resolve the issue at the present time, has cast his potential claim as a violation of his due process right to have jury arrays represent a true cross section of the community."

considered conduct falling below the level of reasonably competent representation." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, supra, 51 Conn. App. 820–21.

"While an appellate advocate must provide effective assistance, he is not under an obligation to raise every conceivable issue. A brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." (Internal quotation marks omitted.) *McIver* v. *Warden*, supra, 28 Conn. App. 202.

"Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. . . . Appellate advocates select what in their professional judgment, are the most promising issues for review. . . . It is possible to leave out a dispositive issue on appeal and nevertheless, to have furnished a petitioner with adequate counsel under the sixth amendment. . . . A reviewing court must be highly deferential to counsel's decision and judge the action from counsel's perspective at the time. . . . Thus, our action in reaching the petitioner's challenge based on ineffective assistance of counsel will further the goals of finality and minimize intentional defaults as well as provide relief for petitioners who have been denied their constitutional rights in appropriate cases." (Citations omitted; internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, supra, 51 Conn. App. 822.

The petitioner's appellate counsel, Charles Ray, testified at the habeas hearing that only on his motion for reargument did he consider the issue of whether the trial court should, sua sponte, have ordered an evidentiary hearing. Although Ray conceded that the argument may have had merit, the fact that it was not raised does

not mean that the petitioner was deprived of effective assistance of counsel. As we have noted previously, the standard for effective assistance is not so rigorous as to demand that every meritorious issue be considered and raised by appellate counsel. Moreover, we cannot reasonably conclude that a reviewing court would have found that the trial court improperly failed to order, sua sponte, an evidentiary hearing where defense counsel had investigated the matter and represented to the trial court that he could find no evidence of systematic exclusion.

The judgment is affirmed.

In this opinion the other judges concurred.