## PERCELL BLAKENEY v. COMMISSIONER OF CORRECTION
## (AC 15788)

O'Connell, C. J., and Foti and Spear, Js.

---

Argued September 18, 1997—officially released February 3, 1998

*James A. Shanley*, special public defender, *Nicole Anker*, certified legal intern, and *Percell Blakeney*, pro se, with whom were *Timothy H. Everett*, and, on the brief, *Audrey Felsen*, certified legal intern, for the appellant (petitioner).

*Paul J. Ferencek*, assistant state's attorney, with whom, on the brief, were *Patricia A. Swords*, state's attorney, and *Christopher A. Alexy*, assistant state's attorney, for the appellee (respondent).

*Opinion*

SPEAR, J. The petitioner sought a writ of habeas corpus challenging his convictions of burglary in the first degree in violation of General Statutes § 53a-101

and burglary in the second degree in violation of General Statutes § 53a-102. He appeals from the judgment of the habeas court dismissing the petition and claims that (1) the prosecutor's failure to sign the information that charged burglary in the first degree deprived the trial court of subject matter jurisdiction as to that offense, (2) counsel was ineffective in pursuing the petitioner's appeal because of her conflict of interest, and (3) the trial court deprived him of effective assistance of trial and appellate counsel by (a) denying his motion to withdraw his guilty pleas, (b) denying trial counsel's motion to withdraw, (c) denying the petitioner the right to represent himself, (d) failing to inquire into trial counsel's conflict of interest and (e) failing to appoint a new attorney to file his appeal. We affirm the judgment of the habeas court.

The trial court's memorandum of decision and the record disclose the following facts and procedural history. On the count of burglary in the first degree the petitioner was sentenced to a term of fourteen years, with the execution of the sentence suspended after nine years. On the count of burglary in the second degree, charged in a separate information, the petitioner was sentenced to a term of nine years to be served concurrently with the sentence for burglary in the first degree. On the day of sentencing, the petitioner moved to vacate his guilty pleas claiming, inter alia, that his trial counsel had been ineffective. His trial attorney then moved to withdraw, citing a breakdown in communication between her and the petitioner. The court denied both motions.

After the petitioner was sentenced, trial counsel filed an appeal on his behalf. Thereafter, counsel filed an *Anders* brief[1] stating that any appeal would be frivolous

---

[1] *Anders* v. *California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). In that case, the United States Supreme Court set out the proper procedure for counsel and the court where counsel believes that an appeal would be frivolous.

and requesting permission to withdraw as appellate counsel. The trial court, pursuant to Practice Book § 954,[2] granted the motion to withdraw and declined to appoint new appellate counsel. The petitioner appealed pro se and this court affirmed his conviction in *State v. Blakeney*, 36 Conn. App. 939, 651 A.2d 1354 (1995). The petitioner thereafter filed a petition for a writ of habeas corpus alleging, inter alia, the matters that he now raises on appeal.

The habeas court dismissed the petition concluding that although Practice Book § 617 provides that "[a]n information shall be signed by the prosecuting authority," the rules of practice cannot confer subject matter jurisdiction and, therefore, the petitioner's guilty plea constituted a waiver of this nonjurisdictional defect. The habeas court also found that the petitioner's trial counsel had no conflict of interest, concluding that the alleged conflict was "at most, a personal conflict brought on by the petitioner's unwillingness to place his confidence in the public defender who had been assigned to represent him." The habeas court further found that "[t]he petitioner has failed to prove that this 'personal' conflict adversely affected [counsel's] representation either in the trial court or on appeal."

Addressing the claim concerning counsel's alleged conflict on his appeal, the habeas court found that at the time trial counsel filed the petitioner's appeal, she intended to pursue it and determined that the appeal would be frivolous only after the appeal was filed. The

---

[2] Practice Book § 954 provides: "Finding that Appeal Is Frivolous

"The presiding judge shall fully examine the briefs of counsel and of the defendant, and shall review the transcript of the trial. If, after such examination, the presiding judge concludes that the defendant's appeal is wholly frivolous, he may grant counsel's motion to withdraw and refuse to appoint new counsel. Before refusing to appoint new counsel, the presiding judge shall make a finding that the appeal is wholly frivolous and shall file a memorandum, setting forth the basis for his finding."

trial court found that trial counsel had "an open mind at the time she was appointed to represent the petitioner on appeal and that she conducted an objective review of the transcripts of the proceedings up to and including the petitioner's sentencing to determine if there were any nonfrivolous issues that could be advanced on the petitioner's behalf." Finally, the habeas court concluded that the trial court that allowed counsel to withdraw as appellate counsel fully complied with Practice Book § 954[3] and properly refused to appoint new appellate counsel. This appeal followed.[4]

## I

We first address the petitioner's claim that the trial court lacked subject matter jurisdiction because the prosecutor failed to sign the information charging burglary in the first degree. "Jurisdiction involves the power in a court to hear and determine the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created." (Internal quotation marks omitted.) *State* v. *Carey*, 222 Conn. 299, 305, 610 A.2d 1147 (1992), on appeal after remand, 228 Conn. 487, 636 A.2d 840 (1994). "Lack of subject matter jurisdiction may be raised at any time. . . . Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." (Citations omitted; internal quotation marks omitted.) *Second*

---

[3] See footnote 2.

[4] The *habeas court granted certification to appeal the following issues:* "(1) Did the court err in its determination that the petitioner was not denied effective assistance of counsel on his appeal, and (2) Did the court err in its determination that his prosecution [for burglary in the first degree] on an unsigned information did not deprive the court of subject matter jurisdiction." Although the certification was granted as to three issues, two of them are identical (ineffective assistance on appeal).

*Injury Fund* v. *Lupachino*, 45 Conn. App. 324, 330, 695 A.2d 1072 (1997).

The petitioner's jurisdictional argument is premised primarily on the following statement in an 1816 Supreme Court decision: "[W]hat is intended by *exhibiting* a complaint, or information, in criminal cases [is] . . . [t]he presentment of the complaint, signed by some proper informing officer, to a court or public officer, who has authority to receive the same, and to issue a warrant to apprehend the offender, and bring him to trial . . . ." (Emphasis in original.) *Newell* v. *State*, 2 Conn. 38, 40 (1816). Reasoning that at common law a prosecutor had to exhibit a proper information to invoke the criminal jurisdiction of the Superior Court and that a proper information is one that is signed, the petitioner asserts that the court has no subject matter jurisdiction where the information is not signed.

Missing from this syllogism is the important fact that the language in *Newell* on which he relies is dicta. The Supreme Court was not asked to pass on whether an information that was not signed by a proper informing officer deprived the court of subject matter jurisdiction. Rather, the question presented was whether the applicable one year statute of limitations barred prosecution for an offense where the complaint was exhibited to a justice of the peace within one year of the offense, but not presented to the court until after the year had expired.[5] We are not inclined to imbue the quoted

[5] In *Newell* v. *State*, supra, 2 Conn. 38, the plaintiff in error claimed that the prosecution was barred by the one year statute of limitations. The statute required that the information be exhibited within one year after the offense is committed. The brief opinion of Chief Justice Swift is as follows: "The question is, what is intended by *exhibiting* a complaint, or information, in criminal cases. The presentment of the complaint, signed by some proper informing officer, to a court or public officer, who has authority to receive the same, and to issue a warrant to apprehend the offender, and bring him to trial, must be a compliance with the law. In this case, a justice of the peace had power to cause the offender to be apprehended; and though he had

phrase with jurisdictional significance where the Supreme Court in *Newell* did not consider the issue raised here. Our reticence is buttressed by "the principle that every presumption is to be indulged in favor of subject matter jurisdiction." *Sheff* v. *O'Neill*, 238 Conn. 1, 15, 678 A.2d 1267 (1996).

The petitioner's reliance on *Koennicke* v. *Maiorano*, 43 Conn. App. 1, 682 A.2d 1046 (1996), is also misplaced. The petitioner cites *Koennicke* for the axiomatic proposition that "while the Superior Court is a court of general jurisdiction, that jurisdiction must be properly invoked by the parties in order for a court to entertain a cause of action." In *Koennicke*, we said that the attorney trial referee and the trial court had no subject matter jurisdiction over the third count of a civil complaint that alleged criminal trespass in violation of General Statutes § 53a-107. Although not stated expressly, *Koennicke* implicates the standing aspect of subject matter jurisdiction rather than the general power of the court to hear criminal cases. " 'Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause.' " *Monroe* v. *Horwitch*, 215 Conn. 469, 473, 576 A.2d 1280 (1990); *Housing Authority* v. *Local 1161*, 1 Conn. App. 154, 157, 468 A.2d 1251, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest . . . in the subject matter of the controversy."

not final cognizance of the offence, he had power to take proper measures to cause him to appear before a court of competent jurisdiction to try him. To exhibit the information to such public officer, is a strict and literal compliance with the statute; and such has been the immemorial and uniform usage in the state. And unless such power is given to single ministers of justice, a very convenient opportunity would often be afforded to offenders, to escape from justice." (Emphasis in original.) *Newell* v. *State*, supra, 2 Conn. 40.

(Internal quotation marks omitted.) *Ardmare Construction Co.* v. *Freedman,* 191 Conn. 497, 501, 467 A.2d 674 (1983), quoting *Hiland* v. *Ives,* 28 Conn. Sup. 243, 245, 257 A.2d 822 (1966).

No citation of authority is necessary for the proposition that only an authorized official has the right to prosecute a criminal charge. The plaintiff in *Koennicke* v. *Maiorano,* supra, 43 Conn. App. 1, lacked standing to bring a criminal charge because he was not a prosecutor.[6] More than 100 years ago, our Supreme Court stated that "[i]t has been uniformly held since 1730 that the office [of state's attorney] then established carried with it the duty to conduct all criminal prosecutions in the Superior Courts, and the power to institute and carry on in every court having criminal jurisdiction (unless restrained by some statute) any criminal prosecution within the jurisdiction of the court, and also the power and duty to exercise the common law powers appertaining to the office . . . so far as applicable to our system of jurisprudence. . . . It is then the common law of this State that authorizes the State's Attorney to file informations in the Superior Court . . . ." *State* v. *Keena,* 64 Conn. 212, 215, 29 A. 470 (1894). Our Supreme Court recently affirmed these principles, stating that "public prosecution for crimes against the sovereign originated in colonial times. Prosecutors were appointed by and answerable to the sovereign because public justice could not depend upon the financial resources of victims." *Massameno* v. *Statewide Grievance Committee,* 234 Conn. 539, 555, 663 A.2d 317 (1995), citing *State* v. *Keena,* supra, 214.

The prosecutor here had standing because of his actual authority as a prosecuting official. That authority is conceded by the petitioner and his attempt to make

[6] Nothing in *Koennicke* v. *Maiorano,* supra, 43 Conn. App. 1, indicates that the plaintiff was a prosecutor. Even if he were a prosecutor at the time, he was not acting as such in pursuing the civil action.

a signed information the sine qua non of the court's jurisdiction finds no support in Connecticut case law. In a footnote, the petitioner cites *Housing Authority* v. *Collins*, 38 Conn. Sup. 389, 449 A.2d 189 (1982), and *Shokite* v. *Perez*, 19 Conn. App. 203, 561 A.2d 461 (1989). In *Collins*, the Appellate Session of the Superior Court affirmed the trial court's dismissal of a summary process action because the complaint was not signed by an attorney as required by the rules of practice. The court said that the unsigned complaint should not have been accepted for filing and because the time within which a technical defect was curable by amendment had passed, "there was no complaint properly before the court to which an amendment might be annexed." *Housing Authority* v. *Collins*, supra, 393. This court held in *Shokite* that where the applicable statute required only that the writ be signed in civil process, the lack of an attorney's signature on the complaint did not deprive the trial court of subject matter jurisdiction, even though the rules of practice required an attorney's signature on all pleadings. We noted in *Shokite* that the plaintiff filed a signed complaint within the thirty day period after the return date during which a defect was curable as of right pursuant to the rules of practice. That fact distinguished *Shokite* from *Collins*.

Neither of those cases avails the petitioner. *Collins* does not address a situation where, as here, judgment has entered on an unsigned complaint. *Shokite* makes clear that the lack of an attorney's signature on a complaint, although violative of Practice Book § 617, does not implicate subject matter jurisdiction.

The petitioner directs us to four cases from other states in support of his jurisdictional claim. None of those cases advances his cause. In *South Dakota* v. *Escalante*, 458 N.W.2d 787 (S.D. 1990), a statute required that informations be signed by a prosecuting

attorney, and case law established that the court's jurisdiction turns on such signature. In contrast, General Statutes § 54-46[7] does not require that an information be signed and our case law, contrary to the petitioner's claim, does not make the signature a jurisdictional prerequisite.

While *Joplin* v. *Graham*, 679 S.W.2d 897 (Mo. App. 1984), did hold that the trial court lacked subject matter jurisdiction where the prosecutor failed to sign the information, *Joplin* was overruled by *State* v. *Knight*, 764 S.W.2d 656 (Mo. App. 1988). The *Knight* court held that, pursuant to a post-*Joplin* rule of court, the lack of a prosecutor's signature was only a minor defect that did not prejudice the defendant.

In *Robertson* v. *Indiana*, 650 N.E.2d 1177 (Ind. App. 1995), a deputy prosecutor signed the information instead of the statutorily designated prosecuting attorney. The court affirmed the conviction and held that the statute had been satisfied because it allowed for a substitute signature if it was sworn to by a prosecuting attorney.

In *Hawaii* v. *Knoeppel*, 71 Haw. 168, 785 P.2d 1321 (1990), the court did hold that the lack of a prosecutor's signature was a fatal, as opposed to a formal, defect because a statute required that the prosecutor sign complaints. We note that in reversing the conviction the court did not expressly state that the defect implicated the court's subject matter jurisdiction. Even if we assume that the defect was jurisdictional, *Knoeppel* is inapposite because our statute has no signature requirement.

Our review of other cases from our sister states on this issue discloses a divergence of opinion that is

---

[7] General Statutes § 54-46 provides in relevant part: "Prosecution on complaint or information. For all crimes charged by the state . . . the prosecution may be by complaint or information. . . ."

weighted in favor of viewing the defect as nonjurisdictional. Concluding that the lack of a prosecutor's signature on the information is jurisdictional are *Buis* v. *State*, 792 P.2d 427 (Okla. Crim. 1990) (state's failure to endorse information and thereby to verify arresting officer's signature as required by statute deprived court of subject matter jurisdiction), and *Smokes* v. *Wilmington*, 282 A.2d 634 (Del. Super. 1971) (attorney general's failure to sign information as required by statute was jurisdictional defect requiring reversal of conviction). In *State* v. *Johnson*, 101 Ohio App. 3d 129, 655 N.E.2d 208 (1995), the court reversed the conviction because the information was unsigned, in violation of the controlling statute, and therefore void. We note that in each of these cases a statute required the prosecutor's signature on the information.

The following cases upheld convictions despite the lack of a prosecutor's signature on the information. *Montanez* v. *State*, 630 So.2d 1163 (Fla. App. 1993) (objection to prosecutor's failure to sign information untimely when raised for first time on appeal; rule provided that objection to lack of proper signature on information waived if not raised prior to pleading to substantive charges); *State* v. *Hobson*, 284 N.W.2d 239 (Iowa 1979) (failure to have authorized person sign and file trial information does not affect subject matter jurisdiction); *State* v. *Thompson*, 543 So.2d 1132 (La. App. 1989) (prosecution fully ratified filing of formal charges by presenting case at trial and defendant's failure to move to quash information at trial constituted waiver of his right to object to unsigned information); *State* v. *Romulus*, 315 Md. 526, 555 A.2d 494 (1989) (omission of prosecutor's signature mere irregularity that can be remedied and, once judgment of conviction rendered without defendant's raising defect, defendant conclusively presumed to have waived issue); *State* v. *Holdner*, 96 Or. App. 445, 772 P.2d 1382 (1989) (statute

requiring prosecutor's signature on information enacted to avoid frivolous litigation and fact that prosecutor tried defendant proved that he did not regard complaint as frivolous, thus lack of signature not fatal defect); *Commonwealth* v. *Slyman*, 334 Pa. Super. 415, 483 A.2d 519 (1984) (unsigned information merely voidable and defendant's failure to file motion to quash information waives his right to attack information on appellate review); *Mills* v. *State*, 802 S.W.2d 400 (Tex. App. 1991) (lack of statutorily required prosecutor's signature must be attacked by pretrial objection as required by rules of procedure and statute and absent such objection there can be no appellate review of issue).

We find further support for the proposition that the lack of a prosecutor's signature is not jurisdictional in cases involving the other traditional charging document, the bill of indictment. In the following cases, convictions were affirmed despite the lack of a required signature on the indictment. See *Williams* v. *State*, 512 So. 2d 666 (Miss. 1987) (absence of foreman's signature procedural defect waived by defendant's failure to demur to indictment); *State* v. *Colvin*, 92 N.C. App. 152, 374 S.E.2d 126 (1988) (lack of grand jury foreman's signature mere clerical error and clearly not prejudicial to defendant, especially where other four indictments properly signed and bill of indictment could be amended by adding foreman's signature); *Pringle* v. *State*, 339 S.E.2d 127 (S.C. 1986) (foreman's signature not essential to validity of indictment; "True Bill" stamp on indictment conclusive proof that grand jury voted to indict defendant where indictment in writing and published by clerk); *State* v. *Chambless*, 682 S.W.2d 227 (Tenn. Crim. App. 1984) (in dicta, court said signature of grand jury foreman ministerial act; if defendant goes to trial without objecting to lack of signature, defect waived and indictment valid).

In *People* v. *Benitez*, 169 Ill.2d 245, 661 N.E.2d 344 (1996), the court held that, although the signatures of the prosecutor and the grand jury foreman were required by statute on the indictment and neither person signed, the lack of signatures did not require reversal. The Supreme Court of Ohio has held in a habeas corpus case that the failure of the grand jury foreman to sign the indictment did not deprive the trial court of jurisdiction. See *State ex rel. Justice* v. *McMackin*, 53 Ohio St. 3d 72, 558 N.E.2d 1183 (1990); see also *Brown* v. *State*, 177 Ga. App. 284, 339 S.E.2d 332 (1985) (where special assistant signed indictment, district attorney's failure to sign it did not render indictment subject to attack); *Peck* v. *State*, 923 S.W.2d 839 (Tex. App. 1996) (absence of foreman's signature does not invalidate indictment that otherwise fulfills legal requirements as where assistant foreman signs indictment in place of foreman).

The more well reasoned and persuasive cases are those that hold that the lack of a required signature on an information or indictment is a waivable, nonjurisdictional defect. Moreover, when we consider the underlying purpose of signatures, the implausibility of the petitioner's claim becomes even more apparent. "The significance of a signature appearing on documents . . . lies in the fact that a signature is the name of a person written with his own hand to signify that the writing which precedes accords with his wishes or intentions. . . . The signature to a writing is placed there, moreover, for the purpose of authenticating it." (Citation omitted; internal quotation marks omitted.) *Fidelity & Casualty Co.* v. *Constitution National Bank*, 167 Conn. 478, 491, 356 A.2d 117 (1975). Authentication of a document is the primary purpose of a signature requirement. See *Woodruff & Son* v. *Rhoton*, 251 Iowa 550, 556, 101 N.W.2d 720 (1960); *Parma Tile Mosaic & Marble Co.* v. *Estate of Short*, 87 N.Y.2d 524, 527, 663 N.E.2d 633, 640 N.Y.S.2d 477 (1996); *Mesibov, Glinert &*

*Levy, Inc.* v. *Cohen Bros. Mfg. Co.*, 245 N.Y. 305, 310, 157 N.E. 148 (1927); *Capital Bank* v. *American Eyewear, Inc.*, 597 S.W.2d 17, 19 (Tex. Civ. App. 1980). There is no claim here that the prosecuting official lacked authority. By the very act of pursuing the charges to conviction, the prosecutor authenticated the information even more effectively than his signature could have done.

Absent a statutory or case law requirement that the information be signed by a prosecutor and where the actual authority of the prosecutor is unquestioned, common sense dictates that we treat such a lack of signature as a nonjurisdictional defect. That conclusion is further compelled by the rationale of the cases from our sister jurisdictions that so hold.

While historically it has been customary for a prosecutor to sign the information and although Practice Book § 617 codifies that practice, such a procedural rule does not implicate subject matter jurisdiction. Our Supreme Court has stated: "Practice Book rules do not ordinarily define subject matter jurisdiction. General Statutes § 51-14 (a) authorizes the judges of the Superior Court to promulgate rules regulating pleading, practice and procedure in judicial proceedings. . . . Such rules shall not abridge, enlarge or modify any substantive right nor the jurisdiction of any of the courts. The defendant has not presented us with any examples of criminal Practice Book rules that affect subject matter jurisdiction." (Internal quotation marks omitted.) *State* v. *Carey,* supra, 222 Conn. 307. "Even if a statute or Practice Book rule must be strictly construed and is mandatory, compliance with its requirements does not necessarily become a prerequisite to a court's subject matter jurisdiction." Id., 310. The rule of practice, § 617, that requires the prosecutor's signature on the information is rooted in custom, but not common law as the petitioner asserts.

We conclude that the prosecuting authority's failure to sign the information did not deprive the trial court of subject matter jurisdiction. Consequently, the petitioner's guilty pleas constituted a waiver of this nonjurisdictional defect. See *State* v. *Reddick*, 224 Conn. 445, 451, 619 A.2d 453 (1993); *State* v. *Niblack*, 220 Conn. 270, 276–77, 596 A.2d 407 (1991). We now turn to the claim of ineffective assistance of counsel.

## II

The petitioner asserts that his attorney had a conflict of interest that rendered her assistance ineffective in pursuing his appeal. He claims that trial counsel should not have agreed to serve as appellate counsel because of her inherent conflict with the petitioner. Alternatively, he claims that she should have requested that new counsel be appointed to review the entire file after she determined that an appeal would be frivolous. Both claims hinge on counsel's having an actual conflict of interest.

A two-pronged analysis for evaluating claims of ineffective assistance of counsel is set out in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Citing *Strickland*, we have said that "[f]irst, the petitioner must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as the counsel guaranteed to the criminal defendant under the sixth amendment, which in turn requires a showing that counsel's representation fell below an objective standard of reasonableness. . . . Second, the petitioner must show that counsel's errors were so serious as to render the result of the trial unreliable. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, the petitioner must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different. In this context, a reasonable probability does not require a showing that counsel's deficient conduct more likely than not altered the outcome in the case, but rather requires that the petitioner establish a probability sufficient to undermine confidence in the outcome. . . . The petitioner must satisfy both prongs of the analysis to prevail on his ineffectiveness of counsel claim." (Citations omitted; internal quotation marks omitted.) *Rodriquez* v. *Commissioner of Correction*, 35 Conn. App. 527, 534, 646 A.2d 919, cert. denied, 231 Conn. 935, 650 A.2d 172 (1994).

Our Supreme Court has established the proof requirements where a habeas corpus petitioner claims ineffective assistance of counsel because of a claimed conflict of interest. "Where, however, the defendant claims that his counsel was burdened by an actual conflict of interest . . . the defendant need not establish actual prejudice. . . . Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. . . . In a case of a claimed conflict of interest, therefore, in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance." (Citations omitted; internal quotation marks omitted.) *Phillips* v. *Warden*, 220 Conn. 112, 132–33, 595 A.2d 1356 (1991).

On appellate review, the "historical facts found by the habeas court may not be disturbed unless they were clearly erroneous . . . ." Id., 131. When, as in this case, those facts are essential to a determination of whether

the petitioner's sixth amendment rights have been violated, we are presented with a mixed question of law and fact requiring plenary review. See id.; *McIver* v. *Warden*, 28 Conn. App. 195, 203, 612 A.2d 103, cert. denied, 224 Conn. 906, 615 A.2d 1048 (1992); *Rodriquez* v. *Commissioner of Correction*, supra, 35 Conn. App. 535.

The petitioner's claim founders because there is no evidence that establishes an actual conflict of interest. He asserts that a conflict arose because he wanted to argue that his guilty pleas should be vacated due to ineffective assistance of counsel and that trial counsel, not surprisingly, did not wish to press such a claim. No details regarding the ineffective assistance claim were given to the trial court. The petitioner claims that once he alleged that trial counsel was ineffective, an inherent conflict of interest was created without the need for details and, as a result of the conflict, trial counsel could not properly act as appellate counsel. The petitioner offers no authority for the proposition that simply by mouthing the words "ineffective assistance" he was entitled to a new attorney for appeal purposes. He offers no analysis as to why the trial court's finding of no actual conflict is incorrect and points to no evidence that establishes an actual conflict. He relies solely on the fact that trial counsel both asked to withdraw in the trial court and stated that another attorney should be appointed because of the ineffective assistance allegation. Faced with an uncooperative and distrustful client, counsel's motion to withdraw and her request for a new attorney are understandable, but do not establish an actual conflict.

The respondent properly points out the caution from the United States Supreme Court that "the *possibility* of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's

performance." (Emphasis added.) *Cuyler* v. *Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). "To demonstrate an actual conflict of interest, the petitioner must be able to point to *specific instances* in the record which suggest an impairment or compromise of his interests for the benefit of another party." (Emphasis added.) *Danner* v. *United States*, 820 F.2d 1166, 1169 (11th Cir. 1987), cert. denied, 484 U.S. 1012, 108 S. Ct. 713, 98 L. Ed. 2d 663 (1988).

We are not persuaded that a mere conclusory allegation of ineffective assistance, without specific details, creates a disqualifying conflict of interest on the part of the accused attorney. Our review of the record convinces us that the trial court properly found that there was no actual conflict of interest and, therefore, no ineffective assistance of appellate counsel.

### III

The petitioner's last claim is that the trial court deprived him of effective assistance of trial and appellate counsel by (1) denying his motion to vacate his guilty pleas, (2) denying trial counsel's motion to withdraw, (3) denying the petitioner the right to represent himself, (4) failing to inquire into trial counsel's conflict of interest and (5) failing to appoint a new attorney to file his appeal.

The first three subparts of this claim are directed at the actions of the trial court in the trial court proceedings. As such, they are not within the issue of ineffective assistance of appellate counsel that was certified by the habeas court.[8] Therefore, we will not review them.[9]

We view the last two claims as within the certification, but decline to review them because of inadequate

---

[8] See footnote 4.

[9] Even if these claims were within the certification, they would not be reviewable because they were briefed inadequately. See our discussion with respect to the last two parts of the claim.

briefing. The petitioner briefed these issues pro se even though he is represented by counsel who briefed his other claims. "Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Zanoni* v. *Hudon*, 42 Conn. App. 70, 77, 678 A.2d 12 (1996). The petitioner cites no cases, statutes, rules or any other legal authority in support of his claims. He simply asserts that there was an "obvious" conflict "between the petitioner, counsel and counsel's investigator but also a conflict between the petitioner, the Meriden Superior Court and the Meriden public defender's office that was reported to the trial court by [trial counsel] . . . requesting that the case be transferred to another court . . . because of the inherent conflict of interest in the matter."

"We are not required to review issues that have been improperly presented to this court through an inadequate brief." *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–45, 699 A.2d 101 (1997). "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 1346 (1996). The petitioner has provided us with nothing more than conclusory assertions.

The judgment is affirmed.

In this opinion the other judges concurred.