STATE OF CONNECTICUT *v.* EDWARD NELSON
(AC 33691)

Robinson, Keller and Bishop, Js.

Argued May 15—officially released August 6, 2013

*Edward Nelson*, self-represented, the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Nancy Dolinsky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Edward Nelson, appeals from the judgment of conviction, rendered following a jury trial, of one count of interfering with an officer in violation of General Statutes § 53a-167a and one count of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1). The defendant claims that the trial court improperly (1) denied two motions to dismiss concerning (a) the statute of limitations pursuant to General Statutes (Rev. to 2007) § 54-193 (b), and (b) the unreasonable delay in prosecution in light of General Statutes (Rev. to 2007) § 54-142a (c); (2) rejected his motion in limine to preclude a police officer from testifying regarding testimonial hearsay

statements in violation of *Crawford*;[1] and (3) violated his due process rights when it rejected his request to charge the jury concerning a "common-law privilege to resist unlawful police conduct" and self-defense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 22, 2006, at approximately 12:39 a.m., Officer David Dogali was patrolling Greenwich Avenue in Stamford in a marked police vehicle when he was flagged down by Anthony Hinton, a security staff employee at Café Bahia, a nearby nightclub. Hinton informed Dogali that a black male had punched a black female in the face during an argument nearby. Hinton then pointed out the defendant to Dogali.

Dogali stopped the defendant and asked him if he had been arguing with a female. The defendant immediately began loudly yelling to Dogali that Dogali had no business talking to him, that he was a law student who knew his rights, and that he did not have to talk to Dogali. Despite Dogali's attempts to calm the defendant and to explain his reasons for stopping him, the defendant remained enraged and uncooperative, and began to walk away and leave the area. Dogali informed the defendant that he could not allow him to leave the area until he had investigated what had happened. Dogali then asked the defendant to place his hands on a nearby vehicle, but the defendant continued to yell, scream, and resist Dogali.

The defendant's wife, Patricia Nelson, suddenly charged at Dogali while pointing at the defendant, screaming that she wanted him arrested and that she was pressing charges.[2] The defendant continued to struggle while Dogali informed him that he was under

---

[1] *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[2] The defendant's wife also was arrested in connection with the same incident for interfering with an officer and breach of the peace.

arrest. Because the defendant did not comply with Dogali's request to put his hands behind his back, Dogali grabbed the defendant's right arm, placed it behind his back, and attempted to apply handcuffs. Despite Dogali's repeated commands to stop resisting, the defendant continued to scream that Dogali had no right to arrest him and that he was going to sue Dogali.

Sergeant Thomas Scanlon arrived at the scene while Dogali was still struggling with the defendant. Both Dogali and Scanlon instructed the defendant to stop resisting and Scanlon warned that if he did not comply, he was going to use the Taser gun on him. As the defendant continued to refuse to cooperate, Scanlon used the Taser gun, shocking the defendant on his left leg. The officers were then able to handcuff the defendant and place him in the backseat of a patrol car.

Once in the patrol car, the defendant continued to scream that he was going to sue Dogali, that Dogali's job was as good as gone, and that he had no business arresting him. Subsequently, when Dogali attempted to process the defendant at the police station, the defendant would not comply physically. He refused to give his address, and, when asked to remove his shirt, he threw it at another officer's face. The defendant was then handcuffed again before requesting medical attention for his leg.

On his arrest, the defendant was charged with interfering with a police officer, breach of the peace in the second degree, and assault in the third degree. The initial information, dated October 23, 2006, charged the defendant with interfering with an officer and two counts of breach of the peace in the second degree. The state later amended the original information on April 5, 2011, by eliminating one count of breach of the peace in the second degree, on April 19, 2011, by changing the language in one of the charges, and again

on May 18, 2011, by adding more details concerning the location of the arrest to the information. The operative information dated May 23, 2011, charged the defendant with one count of interfering with an officer in violation of § 53a-167a, and two counts of breach of the peace in the second degree in violation of § 53a-181 (a) (1). The court instructed the jury, among other things, regarding interfering with an officer and breach of the peace. After deliberations, the jury found the defendant guilty of one count of interfering with an officer and one count of breach of the peace in the second degree. After accepting the jury's verdict, the court rendered judgment in accordance with the verdict and sentenced the defendant to a total effective sentence of one year incarceration, execution suspended, and one year of probation with conditions imposed, $3000 in fines, and court costs. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant's first two claims assert that the court improperly denied his two motions to dismiss, filed separately on April 13 and May 3, 2011, on different grounds. Both arguments lack merit.

The following additional procedural history is relevant to our resolution of these claims. After being released on a $2500 bond, the defendant appeared in court for arraignment on October 23, 2006, at which time the state filed an unsigned information setting forth the charges against the defendant. The defendant then appeared in court on November 30, 2006, where he elected to proceed to trial as a self-represented litigant and refused to enter a plea. The court recorded the plea as not guilty and noted a jury trial election. On January 25, 2007, the parties appeared in court for a scheduled pretrial, but the state requested a continuance so it could contact a witness. In response, the

court continued the matter to March 15, 2007. On March 15, 2007, the state offered to enter a nolle prosequi if the defendant agreed to attend counseling with his wife, but the defendant opted instead to proceed to trial. In response, the court placed the case on the one hour notice trial list.[3] Thereafter, there was no activity in the case from March 15, 2007, until March 31, 2011, when the court canvassed the defendant regarding his decision to proceed without counsel. The record reveals no reason for the four year gap in proceedings. Shortly thereafter, the defendant filed two motions to dismiss on different grounds. In the first motion, dated April 13, 2011, the defendant claimed that a nolle prosequi had entered by operation of law pursuant to General Statutes (Rev. to 2007) § 54-142a (c). The court concluded that § 54-142a (c) was only triggered by the continuation of a case at the request of the prosecution and as the record did not show that the delay was attributable to the prosecution, the court denied the defendant's first motion to dismiss. In the second motion, filed May 3, 2011, the defendant argued that the prosecutor's failure to sign the original information rendered the information defective such that the prosecution of his case did not begin within the one year statute of limitations. The court also denied the defendant's second motion noting that the state had filed a short form information, albeit unsigned, the day after the defendant was arrested. In an articulation filed by the court on May 10, 2012, the court stated that it "did not dismiss the case because it determined that the prosecuting authorities' failure to sign the information did not deprive the trial court of subject matter jurisdiction." (Internal quotation marks omitted.)

"[This court's] review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to

[3] It is a common occurrence for the court, in criminal matters, to place a pending case on the trial list with the understanding that the case may be called for trial on short notice.

dismiss will be de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous. . . . The applicable legal standard of review for the denial of a motion to dismiss, therefore, generally turns on whether the appellant seeks to challenge the legal conclusions of the trial court or its factual determinations." (Citation omitted; internal quotation marks omitted.) *State* v. *Golodner*, 305 Conn. 330, 338–39, 46 A.3d 71 (2012).

## A

The defendant asserts that the court improperly denied his May 3, 2011 motion to dismiss, in which he claimed, among other things, that the prosecutor's failure to sign the original information, dated October 23, 2006, rendered the information defective such that the prosecution of his case did not begin within the one year statute of limitations[4] as required by General Statutes (Rev. to 2007) § 54-193 (b).[5]

---

[4] The defendant incorrectly asserts that the prosecution began only with the filing of the amended information, dated April 5, 2011. The defendant also claims that the state improperly added additional charges to an amended information pertaining to a different victim without notice to him. This argument has no merit. "Once prosecution of a criminal case has commenced within the time period allowed by the appropriate statute of limitations, the prosecutor has broad discretion in determining what crime or crimes to charge in any particular situation." (Internal quotation marks omitted.) *State* v. *Thrall*, 39 Conn. Supp. 347, 355, 464 A.2d 854 (1983). The defendant has also briefed this claim separately under the guise of a justiciability issue. The defendant also argues that because the statute of limitations had expired, the state was not "aggrieved" and did not have "standing" to bring the case, that no "case or controversy" ever materialized during the one year period before the statute of limitations had expired, and that the "controversy . . . could not be adjudicated by judicial power because the legislature prohibited the State from pursuing the prosecution of the defendant beyond one (1) year after defendant's arrest, [and] there is no relief that the State can obtain as the one (1) year statute of limitations . . . had expired years before the prosecution sought to amend its information on April 5, 2011." Because we reject the claim that the statute of limitations had expired, we need not address each additional claim individually.

[5] General Statutes (Rev. to 2007) § 54-193 (b) provides in relevant part: "No person may be prosecuted for any offense . . . for which the punishment is or may be imprisonment in excess of one year, except within five years

At the outset, we note that a warrantless arrest constitutes the commencement of a criminal prosecution against an arrestee for statute of limitation purposes. See *State* v. *Thrall*, 39 Conn. Supp. 347, 350, 464 A.2d 854 (1983). Accordingly, the defendant's warrantless arrest on the same day as the offenses are alleged to have been committed by him was a "timely prosecution of the defendant" within the one year statute of limitations. See id. Secondly, whether the original information was signed by the prosecutor is irrelevant for purposes of determining whether a prosecution had been timely commenced. Although Practice Book § 36-11 states that an information "shall be signed by the prosecuting authority," the absence of a required signature on an information is a "waivable, nonjurisdictional defect." *Blakeney* v. *Commissioner of Correction*, 47 Conn. App. 568, 580, 706 A.2d 989, cert. denied, 244 Conn. 913, 713 A.2d 830 (1998). In reaching that conclusion in *Blakeney*, this court noted as well that the central purpose of a signature on an information is authentication. Id. In the present case, however, the defendant makes no claim that the prosecuting official lacked authority to prosecute criminal charges against him. Moreover, the prosecutor's act of pursuing the charges against the defendant "authenticated the information even more effectively than his signature could have done." Id., 581. Therefore, the court properly concluded that the defect of the unsigned initial information did not affect the statute of limitations and properly denied the defendant's first motion to dismiss.

## B

The defendant also contests the court's denial of the April 13, 2011 motion to dismiss, in which the defendant

next after the offense has been committed. No person may be prosecuted for any other offense . . . except within one year next after the offense has been committed."

claimed that because, as of the March 31, 2011 court date, he had not been in court since March of 2007, a nolle prosequi had entered by operation of law pursuant to General Statutes (Rev. to 2007) § 54-142a (c).

General Statutes (Rev. to 2007) § 54-142a (c) provides in relevant part: "Whenever any charge in a criminal case has been continued at the request of the prosecuting attorney, and a period of thirteen months has elapsed since the granting of such continuance during which period there has been no prosecution or other disposition of the matter, the charge shall be nolled as of the date of termination of such thirteen month period and such erasure may thereafter be effected or a petition filed therefor, as the case may be, as provided in this subsection for nolled cases."

In denying the defendant's motion, the court noted that General Statutes (Rev. to 2007) § 54-142a (c) was only triggered by the continuation of a case at the request of the prosecution and that the present case had not been delayed on that basis. The record amply supports the court's conclusions. As the trial court noted, the "nolle clock" is triggered by the *prosecution's* request for a continuance. Here, there is nothing in the record to indicate that the four year gap in proceedings is attributable to the prosecuting attorney. Although the prosecution requested a continuance from January 25, 2007, until March 15, 2007, both parties agreed to the continuance because each wanted to further prepare for the case. This request for a continuance has no bearing, however, on the defendant's claims since the statutorily mandated thirteen month period had not elapsed by the defendant's next court appearance.

On March 15, 2007, after the defendant elected to proceed to trial, the court placed the case on the "one hour list." There is nothing in the record to indicate that the delay in proceedings between March 15, 2007,

and March 30, 2011, was attributable to the prosecution. As the state argues, "it seems unlikely that this statute was intended to punish the prosecutor by extinguishing criminal prosecutions because of delay attributable to Judicial Branch court administration." Furthermore, our Supreme Court has held that the meaning of "at the request of" within the statute indicates that the request for a continuance "must be explicit, that is, the overt act of asking for a continuance . . . which [also] reflects an affirmative action by the court that is *responsive* to some overt action by the state." (Emphasis in original; internal quotation marks omitted.) *State* v. *Winer*, 286 Conn. 666, 678, 945 A.2d 430 (2008). Here, there was no such explicit request by the prosecution nor was there an affirmative action by the court in response.

In sum, there is nothing in the record to indicate that the delay was attributable to the prosecution.[6] We find no error with the court's conclusion that the provisions of General Statutes (Rev. to 2007) § 54-142a (c) were inapplicable or with the court's denial of the defendant's motion to dismiss on that basis.

II

The defendant next claims that the court improperly denied his motion in limine to bar "the prosecution from using any and all testimonial hearsay statements that violate the Confrontation Clause in the Sixth Amendment" and which are contrary to the holding of *Crawford*. This claim is without merit.

The following additional procedural facts are relevant to our resolution of this claim. The defendant filed a motion in limine on April 13, 2011, requesting that the

---

[6] The court noted for the defendant that the appropriate remedy would have been for him to file a motion for a speedy trial, which the defendant did not file until April 5 and April 8, 2011.

court prohibit the state from eliciting testimonial hearsay statements from Dogali concerning Hinton's statements on the night of the incident. The defendant argued that because Dogali would likely testify as to Hinton's statements, such statements would constitute inadmissible hearsay since Hinton was unavailable for cross-examination at trial. The court denied the motion in limine but stated that it would address any objection raised during trial and would consider whether limiting instructions to the jury would be appropriate. When Dogali testified at trial, he stated that Hinton had flagged him down, reported an assault, and pointed the defendant out to Dogali. The court admitted Dogali's testimony over the defendant's objection, not to prove the truth of anything Hinton may have said to Dogali but simply to explain the basis for Dogali's subsequent actions. In overruling the defendant's objections, the court gave two limiting instructions to the jury during Dogali's testimony, informing the jury that it could not use Hinton's statements for the truth of the matter asserted, but only as evidence of what Dogali was thinking at the time these events occurred and the circumstances surrounding the events that occurred at that time.

The applicable standard of appellate review concerning a court's determination of "whether a statement is testimonial and, therefore, subject to the admissibility restrictions of *Crawford* . . . is subject to plenary review." *State* v. *Kirby*, 280 Conn. 361, 378, 908 A.2d 506 (2006). "Although we defer to a trial court's determination of historical facts and credibility, we review a constitutional legal ruling, i.e. whether a statement is testimonial or nontestimonial, de novo. This is particularly so because the legal ruling of whether a statement is testimonial under *Crawford* is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant." (Internal quotation marks omitted.) Id., 379.

In *Crawford*, the United States Supreme Court held that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common-law required: unavailability and a prior opportunity for cross-examination." *Crawford* v. *Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Although the United States Supreme Court declined to explicitly define "testimonial evidence," it did state that testimonial hearsay is not barred when offered for a purpose other than establishing the truth of the matter asserted. Id., 59 n.9.

It is well settled that statements offered not for the truth of the matter asserted, but for the effect on the listener, are not testimonial hearsay statements. C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 8.8.1, p. 471 ("[s]tatements of others that show effect on the hearer or reader are not hearsay on such issues as notice, intent, reasonableness or good faith on the part of the hearer or reader"); see also *State* v. *Cruz*, 212 Conn. 351, 356, 562 A.2d 1071 (1989) ("An out-of-court statement is hearsay when it is offered to establish the truth of the matters contained therein. . . . A statement offered solely to show its effect upon the hearer [however] is not hearsay." [Citations omitted; internal quotation marks omitted.]); *State* v. *Gonzales*, 186 Conn. 426, 429, 441 A.2d 852 (1982) (statements made by police officers over police radios were properly admitted to show their effect on listeners).

Hinton's statements to Dogali on the night of the incident were admitted not for their truth, but solely for their effect on Dogali. As the court instructed the jury, "Mr. Hinton is not here to testify. Any evidence that I allow Officer Dogali to testify to, is not to be used to prove that what Mr. Hinton said happened actually happened. . . . You may, however, consider evidence . . . about what Mr. Hinton told [Officer] Dogali as evidence as to what Officer Dogali was thinking at the

time that these events occurred." Because Dogali's testimony concerning Hinton's statements was not admitted to prove the truth of the matter asserted, they are not hearsay statements, and, therefore, the testimony raised no legitimate confrontation clause issue. *Crawford* v. *Washington*, supra, 541 U.S. 59 n.9. The court thus properly denied the defendant's motion in limine.

## III

The defendant finally claims that the court violated his due process rights when it improperly rejected his request to charge concerning a "common-law privilege to resist unlawful police conduct" and self-defense.[7] The defendant's argument fails.

The following additional procedural facts are necessary for our resolution of this claim. On May 24, 2011, the defendant filed a request to charge, asking the court to charge the jury on the defenses of a "common-law privilege to resist certain types of unlawful police conduct," self-represented defendants, and self-defense.[8] After the court denied the defendant's request as to the

---

[7] The defendant additionally claims that because Dogali did not personally witness the altercation, the defendant's wife recanted her assault accusation, and the state subsequently decided not to proceed with the assault charge, Dogali could not have been acting in the proper performance of his duties when he arrested the defendant. Accordingly, the defendant argues that he was entitled to a jury instruction on common-law privilege to resist an unlawful arrest. Because we conclude that there is no common-law privilege to resist an unlawful arrest in this case, this argument also has no merit.

[8] The defendant's request to charge on the "common-law privilege to resist certain types of unlawful police conduct" stated the following: "Common-law privilege to resist certain types of unlawful police conduct is a legal defense when an officer's conduct is egregious. Officer Dogali's conduct was egregious when he used physical force during his investigation without a reasonable belief that Edward Nelson had committed the crimes of breach of peace and interfering with an officer charges." The defendant's request to charge concerning self-defense encompasses standard language concerning self-defense and thus, need not be reproduced here.

common-law privilege and self-defense, the defendant excepted to the court's denial.[9]

"We begin with the well established standard of review governing the defendant's challenge to the trial court's jury instruction. Our review of the defendant's claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Additionally, we have noted that [a]n [impropriety] in instructions in a criminal case is reversible . . . when it is shown that it is reasonably possible for [improprieties] of constitutional dimension or reasonably probable for nonconstitutional [improprieties] that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 454–55, 10 A.3d 942 (2011).

The defendant asserts that Dogali was not acting in the "proper performance of his duties," an essential element of the interference with an officer statute, and

---

[9] In the written request to charge, the defendant cited no authority to support the notion of a common-law privilege "to resist unlawful police conduct" and cited only *State* v. *Vilchel*, 112 Conn. App. 411, 963 A.2d 658, cert. denied, 291 Conn. 907, 969 A.2d 173 (2009), in a footnote with reference to the self-defense portion of the request to charge. Although the defendant provided no statutory authority in support of either request to charge, we refer to General Statutes § 53a-23, which is the self-defense statute, as it is relevant to our analysis.

that the force used during the arrest, was "excessive and unlawfully applied." As such, the defendant claims that due process required the court to instruct the jury both on a common-law privilege to resist certain types of arrest, as well as self-defense, where the evidence at trial established that an officer used excessive force.

Our Supreme Court has recognized a limited common-law privilege to challenge an unlawful entry by the police into one's home "to the extent that a person's conduct does not rise to the level of a crime." *State* v. *Brocuglio*, 264 Conn. 778, 794, 826 A.2d 145 (2003). In the present case, there was no warrantless entry into the defendant's home and thus, the defendant was not entitled to an instruction related to this limited common-law privilege. *State* v. *Jackson*, 304 Conn. 383, 423, 40 A.3d 290 (2012) ("a trial court should instruct the jury in accordance with a party's request to charge [only] if the proposed instructions are reasonably supported by the evidence" [internal quotation marks omitted]).

Under our self-defense statute, General Statutes § 53a-23, the illegality of an arrest is not a defense to a charge of interfering with an officer pursuant to § 53a-167a. *State* v. *Davis*, 261 Conn. 553, 567, 804 A.2d 781 (2002). "[A] defendant charged with violating § 53a-167a (a) . . . is not entitled to a self-defense instruction. In effect, a detailed instruction that the state must establish that the police officer had been acting in the performance of his duty and that a person is not required to submit to the unlawful use of physical force during the course of an arrest, whether the arrest itself is legal or illegal, stands in lieu of a self-defense instruction in such cases." Id., 571.

In order to prove a violation of interfering with an officer under § 53a-167a, however, the state must prove that the officer was acting "in the performance of his official duties . . . ." (Internal quotation marks omit-

ted.) Id., 566. Accordingly, the court should instruct the jury to apply General Statutes § 53a-22 (b), which provides the standard for when an officer is justified in using physical force upon another to the extent he reasonably believes it to be necessary. Id., 570. In addition, an instruction regarding reasonable force is required because reasonable force is an essential component in determining whether an officer was in fact acting in the performance of his duties. *State* v. *Baptiste*, 133 Conn. App. 614, 627, cert. granted, 304 Conn. 921, 41 A.3d 661 (2012).[10] The question of whether the police officer was in fact acting in the performance of his official duties constitutes a "factual [question] for the jury to determine on the basis of all the circumstances of the case and under appropriate instructions from the court." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 261 Conn. 566.

Here, the record reveals that the trial court did instruct the jury on the requirement that an officer must be acting "in the performance of his official duties" when arresting a suspect pursuant to § 53a-167a. The court instructed the jury in relevant part as follows: "The second element is that the conduct of the defendant occurred while the officer was in the performance of his duties. . . . In determining whether the officer was acting in performance of his duties, you must consider another provision of our law that justifies the use of physical force by officers in making an arrest. The statute provides that an officer is justified in using physical force upon another person when and to the extent he reasonably believes such to be necessary to effect an arrest of a person whom he reasonably believes to have committed an offense unless he knows that the arrest or custody is unauthorized. An officer's use of force to effect the arrest is justified only so far as he

___

[10] We note that in *Baptiste*, our Supreme Court has granted certification to appeal on the question of whether this court properly concluded that the jury instructions regarding the charge of assault of a peace officer were inadequate in that case. See *State* v. *Baptiste*, supra, 304 Conn. 921.

reasonably believes that a person has committed an offense. . . . A reasonable belief that a person has committed an offense means a reasonable belief in facts or circumstances which if true would in law constitute an offense. If the reasonably believed facts and circumstances would not in law constitute an offense, for example the officer was mistaken that the actions of a person constituted an offense, the officer would not be justified in the use of physical force to make an arrest. It is no defense that the arrest was wrongful as long as the officer reasonably believed that the defendant had committed an offense, that is a person is not permitted to use physical force to resist being arrested even if the person sincerely believes that the arrest is unwarranted by a reasonably identifiable officer. . . . If you find that the force used by an officer was not reasonable, you will find that that officer was not acting within the performance of his official duties while attempting to arrest the defendant." On the basis of our review of the entire charge, we conclude that the court's jury instructions properly framed the issues and thus, sufficiently protected the defendant's rights to due process. The defendant's final claim, therefore, must fail.

The judgment is affirmed.

In this opinion the other judges concurred.