[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By his second amended petition filed April 27, 2001, petitioner seeks a writ of habeas corpus. He alleges that on June 20, 1990 he was found guilty of felony murder in violation of Connecticut General Statutes § 53a-54c and robbery in the first degree in violation of § 53a-134
(a)(2). He further alleges that on August 3, 1990, he was sentenced to the custody of respondent for a period of 60 years for the felony murder conviction and 20 years consecutive for robbery in the first degree.
In the first count of the petition it is alleged that petitioner is in the custody of respondent serving this sentence. It is further alleged that such confinement is illegal since his conviction was obtained in violation of his right to effective assistance of counsel as guaranteed by United States Constitution, Amendment VI, XIV and Connecticut Constitution, Article I, § 8. Count two of the petition alleges that petitioner's confinement in the custody of respondent is illegal in that a proper jury charge was not given concerning the testimony of petitioner's co-defendants. The third count of the petition alleges that petitioner did not deliberately bypass the orderly procedure for a direct appeal.
By way of relief, petitioner requests that the sentences imposed be vacated, that he be granted a new trial and such other relief as law and equity may require.
For reasons hereinafter stated, the petition is dismissed.
 I
The first count of the petition contains an allegation of ineffective assistance of counsel. In October, 1988, Attorney Louis Avitabile was appointed as special public defender to represent petitioner. Attorney Avitabile represented petitioner at all stages of the criminal proceeding including the jury trial. Petitioner claims that Attorney Avitabile's representation of him was constitutionally defective.
As a defendant in a criminal prosecution, petitioner was "constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings.". This right arises under the sixth and fourteenth amendments to the United States constitution" Copas v. Commissioner of Correction, 234 Conn. 139, 153
(1995). (Citations omitted.)
The general standard to be applied by habeas courts in determining CT Page 9301 whether an attorney effectively represented a criminal defendant is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed. 674 (1984). "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice.; . thus, he must establish not only that his counsel's performance was deficient, but as a result thereof, he suffered actual prejudice, namely, that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . . In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case . . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome . . . .Bunkley v. Commissioner of Correction, 222 Conn. 444, 445-46, 610 A.2d 592
(1992)." Mercer v. Commissioner of Correction, 51 Conn. App. 638, 640-641
(1999).
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial." Id.
Petitioner was convicted after a jury trial. The conviction was appealed and subsequently affirmed by the Supreme Court. State v. Kyles,221 Conn. 643 (1992). The reported decision contains a statement of facts which a jury could reasonably have found based upon the evidence presented at trial. The statement indicates that on the night of October 8, 1988, petitioner, accompanied by four other men including Jamel Gregg and John Hofler, with drawn guns, entered a private gambling club in Waterbury with the intention of committing a robbery. During the course of the robbery a patron of the club, Robert (Butch) Clark came into the room from the bathroom and tried to leave the club. Petitioner grabbed Clark by the back of the collar, pulled him back into the room and ordered him to lay on the floor. Clark grabbed petitioner's wrist and struggled for the handgun ensued. During the struggle, petitioner fired two shots into Clark and both men ended up on the floor with Clark on top of the petitioner. The petitioner pushed Clark off of him and fired a third shot into Clark's chest. After the shooting, petitioner and his associates ran out of the club and got into a car and drove off. Clark was rushed to the hospital where he died from his gunshot wounds.
It is alleged in the petition that Attorney Avitabile failed to CT Page 9302 properly and adequately prepare petitioner's case for trial in a number of ways and that adequate money was not provided for an expert witness or an investigation. It was also claimed that adequate funds were not provided to enable the attorney to have access to appropriate legal research and staff.
The petitioner testified that his pretrial meetings with Attorney Avitabile were inadequate and that the attorney never reviewed the police reports or other evidence with him. Petitioner expressed the opinion that Attorney Avitabile did not understand the case and that he argued the wrong law to the judge in connection with a motion to suppress.
The evidence, however, does not support plaintiff's claims and allegations.
At the time he represented petitioner, Attorney Avitabile had been in practice for 21 years and had considerable experience in representing persons accused of serious crimes.
In preparation for the case, Attorney Avitabile filed a motion for discovery. In compliance with this motion, well before the trial, the attorney was able to review the state's file and obtain copies of documents. State v. Kyles, supra, 221 Conn. 654.
The services of an investigator were not obtained in preparation of petitioner's case for trial, but an attorney working for Attorney Avitabile interviewed people mentioned in the discovered material and other people developed from the interviews.
Prior to the probable cause hearing, and at other times, Attorney Avitabile met with petitioner and informed him about the status of the case and the evidence.
Attorney Avitabile felt that the stop of the vehicle, in which petitioner had been a passenger, was improper at a motion to suppress the evidence seized as a result of this stop was filed. Id. 664.
An evidentiary hearing was held on the motion. Attorney Avitabile filed a brief in connection with the motion citing both federal and state law. There was nothing to indicate that the attorney cited the wrong law or was limited in his ability to properly research the issues. The motion to suppress, however, was denied when the court decided that the police had made a proper stop of the vehicle under Terry v. Ohio, 3392 U.S. 1,88 Sup. Ct. 1868, 20 L.Ed.2d 889 (1968) Id.
An effort to resolve the case short of trial was made by the state. The CT Page 9303 offer involved a 35 year prison sentence. The offer was communicated to petitioner by Attorney Avitabile. After discussing it with the attorney, petitioner rejected the offer claiming that for him, it would amount to a life sentence.
The attorney was then presented with a situation where the case would have to go to trial. Preparations were made for the trial. The principal defense was the inability to identify petitioner as being one of the robbers or that he was the person who shot Mr. Clark. To identify petitioner, the state would have to rely on the testimony of other participants in the robbery. Other defenses were more technical. For example, it was claimed that in the robbery in the first degree, as alleged in the complaint, could not, or was not proven, and that Mr. Clark was not personally robbed.
At trial, the state called James E. McDonald as an expert witness in the field of ballistics. Attorney Avitabile felt that, under the circumstances of the case, it was unnecessary to call his own expert witness. Although petitioner now claims that an expert should have been retained for the defense, no evidence has been produced to show that the attorney's decision was deficient or that petitioner suffered any prejudice as a result of this decision.
The state called petitioner's co-defendants, Jamal Gregg and John Hofler to testify at the trial. Their testimony was essential to the state's case. Gregg was the first called to the stand. He testified concerning petitioner's participation in the robbery and that he shot Mr. Clark several times.
Attorney Avitabile cross-examined Gregg at length. It is petitioner's claim, however, that the cross-examination of this witness, whose credibility was vital to the state's case, was improper. It is claimed that the attorney failed to bring out to the jury that Gregg was exposed to extended criminal sentences as a result of the same crime and that he may have had an expectation of leniency as a result of his testimony.
Attorney Avitabile's cross-examination of Gregg, although it was extensive, did not touch on this subject.
During Gregg's direct testimony, however, in response to questions by the state's attorney, he testified about the charges against him arising from the crime and that they were then pending.
John Hofler, another participant in the crime, was also called to testify by the state. His testimony was similar to Gregg's testimony in that he placed petitioner at the scene of the crime and that petitioner CT Page 9304 shot Mr. Clark. In his direct testimony, Hofler admitted to the pending charges. In the cross-examination of this witness, Attorney Avitabile questioned Hofler about the pending charges. It was brought out that he had not entered a plea to the charges. The question as to whether Hofler could expect leniency as a result of his testimony was fully explored.
In final argument, Attorney Avitabile reviewed for the jury the credibility which should be afforded the testimony of both Gregg and Hofler and whether or not their testimony was given with any expectation of favorable treatment by the state. The attorney questioned whether the testimony of these witnesses was freely given without a motive to lie and argued that both testified with their "backs to the wall" trying to escape extensive incarceration. The trial judge, in his charge, instructed the jury that in assessing the credibility of any witness, they should consider any bias or specific interest which the witness might have had. The judge also specifically cautioned the jurors about the credibility of these two witnesses and their possible interest in favorable from law enforcement authorities.
Considering the totality of the evidence on the subject, it must be concluded that Attorney Avitabile may have been deficient in not cross-examining Gregg about any expectation of preferential treatment as a result of his testimony. Petitioner, however, suffered no prejudice as a result of this cross-examination. The jury must have been aware of the possibility of such expectation on the part of the witness and the effect which it might have on his credibility. His direct testimony about the pending charges was before the jury. The expectation of leniency was brought out in the cross-examination of his co-defendant Hofler and the jury could easily infer that Gregg was subject to the same bias.
Attorney Avitabile's final argument, and the judge's charge, also removed any possible prejudice which might have resulted in the failure to specifically cross-examine Gregg on the subject.
Petitioner also criticized Attorney Avitabile's theory of defense and his selection of witnesses. In defending petitioner, the attorney was presented with a situation in which the evidence of the robbery and the homicide was overwhelming and two of the participants in the crime were prepared to testify against petitioner and for the state. A review of the file indicates that in addition to raising the credibility of the co-defendant's testimony, the attorney relied on technical imperfections in the information and defenses in law which were not accepted on appeal.
"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's CT Page 9305 representation fell below an objective standard of reasonableness. The proper measure of attorney performance remains simply reasonableness under prevailing norms. It is all too tempting for a defendant to second guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude a particular act or omission of counsel was unreasonable . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting defects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." (Citations omitted.) Johnson v. Commissioner, 218 Conn. 403, 425
(1991). "A reviewing court must be highly deferential to counsel's decision and judge the action from counsel's perspective at the time."Tillman v. Commissioner of Correction, 54 Conn. App. 749, 757 (1999). Considering all of the evidence involved, it must be concluded that petitioner has failed to prove deficient performance on the part of Attorney Avitabile or that petitioner suffered any actual prejudice as a result of attorney's representation of him.
 II
The second count of the petition alleges that the judges' instruction to the jury concerning the possibility of bias on the part of Hofler and Gregg was insufficient. A review of the decision of the Supreme Court in petitioner's appeal indicates that this issue was not presented in such appeal. State v. Kyles, supra, 221, 643. Where a party fails to press a claim of error at the appropriate time, such failure could constitute a waiver of the right to raise the issue later unless a substantial injustice can be found. State v. Evans, 165 Conn. 61, 64-66 (1973). Petitioner could have raised this issue by way of a direct appeal. He did not do so. Under such circumstances petitioner must show good cause for his failure to press the claim and actual prejudice resulting from the alleged constitutional violation. Baez v. Commissioner of Correction,34 Conn. App. 236, 240-41 (1994). In this case, there is nothing to show that petitioner was in any way prevented from raising the issue of the judge's charge on direct appeal. There has been nothing to indicate that the charge was defective or that petitioner suffered any prejudice as a result of the charge as given. Accordingly, it must be concluded that petitioner is procedurally defaulted and the matters set forth in the second count cannot be considered in this proceeding.
The third count of the petition requires no further action by the court.
Accordingly, petition for a writ of habeas corpus is dismissed. CT Page 9306
_______________________________________ Joseph J. Purtill, Judge Trial Referee